Berkebile, Appellant, *v.* Brantly Helicopter Corp.

350

Argued June 12, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Laurence H. Eldredge,* for appellant.

*Sidney L. Wickenhaver,* with him *Montgomery, Mc-Cracken, Walker & Rhoads,* for appellee.

OPINION BY HOFFMAN, J., September 19, 1973:

This is an appeal from a judgment in favor of the appellee, Brantly Helicopter Corporation. Appellant cites numerous grounds for reversal, each of which will be discussed below.

On July 9, 1962, Cloyd G. Berkebile was killed when the Brantly B-2 helicopter he was piloting crashed near Franklin, Pennsylvania. Decedent's executrix brought a wrongful death and survival action against the manufacturer of the helicopter, Brantly Helicopter Corpora-

tion, based on a theory of strict liability. The case was tried before a jury and a verdict was returned for the defendant. On appeal, this Court granted plaintiff a new trial.[1] In the second trial before the Honorable Earl CHUDOFF and a jury, the jury again returned a verdict for the defendant. From a denial of appellant's post-trial motions, this appeal has followed.

## I HISTORY OF CASE

In January of 1962, Mr. Berkebile purchased a small helicopter from Brantly's distributor. There is no dispute that the helicopter was regularly checked and serviced during the six months from the date of purchase.

On July 9, 1962, Mr. Berkebile flew to Chess Lamberton Airport in Franklin and asked for 100 octane gasoline. Finding that fuel was unavailable, Mr. Berkebile took off in the direction of Oil City. Minutes later, when he was only two miles from the airport and while in climbing flight, a seven foot-long piece of one of the three rotor blades separated from the copter and flew off. The helicopter crashed, killing Mr. Berkebile.

Prior to the purchase of the helicopter, Mr. Berkebile had never flown a helicopter. Defendant's advertising brochure, which was primarily directed to the non-professional flier read: "The versatile B-2 is America's lowest priced helicopter designed specifically for

---

[1] The trial judge charged that because the Federal Aviation Agency's regulations established a requirement that all helicopters be able to go into autorotation in one second or more, failure to push the "collective pitch stick" down in one second was "abnormal use." We held that "[c]ompliance with a law or administrative regulation relieves the actor of negligence *per se*, but it does not establish as a matter of law that due care was exercised." *Berkebile v. Brantly Helicopter Corp.*, 219 Pa. Superior Ct. 479, 484, 289 A. 2d 707, 710 (1971). We concluded that the issue of whether defendant had taken adequate precautions in the design of the autorotational system of its helicopter should have gone to the jury.

non-professional use. Tricky to operate? Not at all. Beginners and professionals alike agree that the Brantly is easy to fly with or without experience in conventional aircraft."

At the second trial, plaintiff sought recovery on the following theories: (1) that the design of the rotor system was such that in the event of emergency power failure in climbing flight the pilot had only one-third second to get into autorotation which was not enough time to enable a reasonable man to save his life; (2) the rotor blade was defective; (3) that defendant, in its advertising brochure, misrepresented the safety of the helicopter; (4) the defendant gave no adequate warnings of the need for instantaneous reaction in emergency power failure.

Defendant denying the existence of a defect, theorized that the blade fractured because of abnormal use brought about by greatly reduced rotor speed due to power failure from fuel exhaustion and failure of the decedent to push down the "collective pitch stick" in time to go into autorotation. Defendant further contended that there was sufficient time for the reasonable man to go into autorotation and that adequate warnings and instructions were supplied to do so.

Appellant contends that numerous errors were committed by the trial court in its evidentiary rulings and in its charge to the jury on the applicable law.

An examination of the trial court's charge discloses that the trial judge properly charged the jury on appellant's first two theories. Appellant sought to establish the existence of a defective *condition* in either the rotor blade or the emergency mechanism of the autorotational system. Charging directly from language in *Webb v. Zern*, 422 Pa. 424, 220 A. 2d 853 (1966) and its progeny, the trial court ably instructed the jury on the law with regard to strict liability in tort for a defective condition in a product, as first set out in the

Restatement of Torts, 2d, §402A. Furthermore, the trial judge added that in sustaining his burden of proof, the plaintiff "need not show proof of the specific defect . . . . In order to show this defective condition, the plaintiff need only show a malfunction of the machinery in the absence of abnormal use and need not prove the specific defect." This charge was consistent with our opinion in *MacDougall v. Ford Motor Co.*, 214 Pa. Superior Ct. 384, 257 A. 2d 676 (1969).

Appellant argues that the charge inadequately stated the issue of strict liability with regard to the design of the autorotational system. That portion of the charge was correct. Since experts differed on the time a pilot needs to go into autorotation, Judge CHUDOFF instructed the jury in the following manner: ". . . There is testimony that in this helicopter the pilot would have one second, less than a second or more than a second, depending on which witness you believe. This leads to the question that you must decide, that is, was any of these times sufficient to allow Mr. Berkebile to get into autorotation." From the tenor of the entire charge, we believe that the charge with respect to a defective *condition* or *design* in the aircraft itself was sufficient.

II THE ADEQUACY OF WARNINGS

A. The Law

Appellant has alleged that the erroneous charge and evidentiary rulings informed the jury to base its determination solely on the presence of a defective condition in the aircraft itself. Appellant argues that the court neglected his secondary theory of recovery that there were inadequate warnings and/or misrepresentations of the quality and safety of the copter to the nonprofessional pilot. While the trial judge outlined these contentions, the charge emphasized the alleged defects in the rotor blade and in the autorotational system. In fact, when confronted with this problem by counsel, the

trial judge remarked: "I think that (the defect in the rotor blade) is the whole plaintiff's case." With this evaluation of the case, the trial judge refused a number of appellant's points for charge on the question of warnings. We believe, the jury was not properly instructed on its duty to consider the adequacy of the warnings in determining whether a defective "condition" existed. As a matter of law, a potentially dangerous product that is marketed without adequate directions or warnings as to its use is unreasonably dangerous, and in a defective condition. Restatement of Torts, 2d, §§402, comments j and k; 388.

It is imperative that a jury hearing a case of strict liability in tort be aware of its duty to find liability where inadequate warnings exist, even in the absence of a defect in the design, manufacture, or preparation of the product. As the Court of Appeal for the Third Circuit has said, applying Pennsylvania law: "If the manufacturer owes a duty to use care in making his products, he owes also the companion duty to warn of the latent limitations of even a perfectly made article, the use of which, however, is dangerous if the user is ignorant of those limitations and the manufacturer has no reason to believe that he will recognize the danger." *Tomao v. A. P. De Sanno & Son,* 209 F. 2d 544, 546 (3d Cir. 1954); *Hopkins v. E. I. DuPont De Nemours & Co.,* 199 F. 2d 930 (3d Cir. 1952).

In construing the requirements of the Restatement (§402A), the Ninth Circuit has been even more explicit: "At the outset we reject appellee's contention that the rule applies only where unreasonable danger results because of an ascertainable 'defect' or 'impurity' in the product, and that since this product was precisely what it was intended to be there was no such defect . . . .

"Comment j. recognizes that to prevent a product from being unreasonably dangerous, direction or warnings as to its use *must* be given in appropriate cases."

*Davis v. Wyeth Laboratories, Inc.,* 399 F. 2d 121, 128 (9th Cir. 1968) (Emphasis added). See also, *O. S. Stapley Co. v. Miller,* 447 P. 2d 248, 252 (Ariz. 1968) ; *Toole v. Richardson-Merrell, Inc.,* 60 Cal. Rptr. 398, 413-414 (1967) ; *Yarrow v. Sterling Drug, Inc.,* 263 F. Supp. 159 (D.S.D. 1967) ; *Bower v. Corbell,* 408 P. 2d 307 (Oklahoma, 1965).

Even prior to the incorporation of §402A of the Restatement of Torts, 2d, into our case law, and beginning with the landmark cases of *Ebbert v. Philadelphia Electric Co.,* 330 Pa. 257, 198 A. 323 (1938), and *Maize v. Atlantic Refining Co.,* 352 Pa. 51, 41 A. 2d 850 (1945), our courts have recognized an affirmative duty on the part of a vendor to warn against dangers arising from the use of its product. As our Supreme Court said in *Thomas v. Arvon Products Co.,* 424 Pa. 365, 369, 227 A. 2d 897 (1967) : "Our law is eminently clear that a manufacturer of a potentially dangerous substance owes a duty to the user to exercise reasonable care and to give adequate warning of the dangerous nature of the substance."

In response to the hazards and risks of flight, the Federal Aviation Agency sets down strict safety standards for all aircraft. Anticipating the possibility that inadequate direction and warnings would nullify the effect of compliance with the FAA standards of design and construction, the FAA has promulgated a number of Civil Air Regulations (CAR) specifically to guard against that possibility. Two applicable regulations provide, as follows: "§6.700 (b). The operating limitations, together with any other information concerning the rotorcraft found necessary for safety during operation *shall be included* in the Rotorcraft Flight Manual (§6.740), *shall be expressed as markings and placards,* (§6.730) and shall be made available by such other means as will convey the information to the crew members.

"§6.730 (c). Additional information, placards, and instrument markings having a direct and important bearing on safe operation of the rotorcraft shall be required when unusual design, operating, or handling characteristics so warrant." (Emphasis added).

We have recognized that the FAA standards are to be given great weight, especially where violation of the minimum requirements is evident. In *Berkebile v. Brantly Helicopter Corp.*, supra at 484, we said: "Considering the preeminence of the federal government in the field of air safety and the importance and standing of the FAA we would incline to the view that failure of the manufacturer to comply with the regulations would be negligence *per se*. Our view is strengthened by the fact that *the FAA is empowered to lay down minimum standards and violation of such standards, if the proximate cause of the injury, should submit the violator to liability.*" (Emphasis added).

By virtue of our previous decision in *Berkebile,* supra, the trial judge should have charged the jury that Brantly had a *duty* to supply intelligible and complete warnings and directions with respect to the implementation of the autorotational system in the event of power failure. Since our law clearly states that even a perfectly-constructed product may be defective if inadequate directions or warnings are found to exist, see discussion *supra,* such a charge must be worded in mandatory and not precatory language, and must include the following:

(1) in order to prevent a product from being unreasonably dangerous, directions and warnings *must* be given as to its use;

(2) failure to give such warnings, where such omission is the proximate cause of an injury, makes the seller strictly liable; and

(3) where warnings are given, they must be adequate to inform the user of the risks attendant to the

foreseeable use of said product, and if inadequate, the product is defective.

B.  The charge to the jury

In the instant case, the warnings of the dangers and instructions for flying the B-2 are contained in the Rotorcraft Flight Manual and in the cockpit placard. There is no specific warning as to the time needed to get into autorotation, and there is no direction or warning with respect to "Engine Failure in Climbing Flight." There are, however, directions to the pilot to lower the collective pitch lever in case of engine failure; that autorotation should be implemented at no less than 300 rotor RPM; and, that failure to comply "may result in damage to the outer blades."

The question for the jury was necessarily whether the warnings appearing in the flight manual and the cockpit placard were sufficient to make Mr. Berkebile aware of the dangers of power failure and delayed autorotation, and whether said warnings adequately conveyed the urgency of the situation and the need to react almost instantaneously.

The trial judge charged in the following manner:

"Further, members of the jury, *if you believe* from the evidence *that a warning should have been given* by the use of a warning card, or in the flight manual, setting forth the necessary procedures to follow in the event of any emergency or a power failure, and that warning was not given by properly posting it at a proper place in the helicopter and/or the flight manual, this would be considered under the law a dangerous condition.

"Now, ladies and gentlemen, there was something in the flight manual; there was something posted in the helicopter, and you are going to have an opportunity to see what that said. You must determine whether that card, or placard, whatever you call it, that was posted

in the helicopter, or those directions given in that flight manual, and you are going to take the flight manual with you to the jury room, was the kind of warning that is understandable and should have been understood by Mr. Berkebile.

"Ladies and gentlemen, I do not think that is very difficult to understand. If you take a helicopter and use it abnormally and you do not use it in accordance with the flight manual and an accident occurs, and such improper use was the proximate cause of the accident, that does not make the helicopter defective. You must remember that."

Appellant's points for charge with regard to the warnings had been denied, and he excepted to the above charge. Appellant insisted that he was entitled to incorporation of the FAA standards (quoted above) into the charge verbatim. Furthermore, a point was submitted asking the following: "4. The manufacturer and seller of a product which contains inherent dangers to human life is required to give adequate directions or warnings to the user or consumer of these dangers; and when such a product is sold without such warnings accompanying it, the product is a dangerously defective product."

While the trial judge was not required to adopt appellant's point for charge verbatim, the point correctly stated the law. Furthermore, the trial judge need not have specifically quoted FAA regulations, but the meaning and purpose of those regulations (i.e., to require the manufacturer to supply adequate information to permit the safe operation of the rotorcraft) was vital to the understanding of the necessity for adequate directions and warnings.

The effect of instructing the jury that they should determine if the warnings were adequate, *only* if they believe that "a warning should have been given," was to substitute the jury's judgment for that of the FAA.

The FAA regulations and the case law do not permit such a choice. On the contrary, the jury should have been instructed that in the absence of such warnings there is a defective condition in the helicopter. The balance of the charge was correct; the questions of adequacy and causation were for the jury. In conclusion, appellant's points for charge should have been granted in substance.

### III THE CLAIM OF MISREPRESENTATION OF A MATERIAL FACT

Appellant next claims that the trial court erred in denying its point for charge on the issue of misrepresentation of a material fact. Appellant contends the misrepresentation is contained in the advertising brochure which created a false sense of security in the minds of purchasers.[2] Appellant asks this Court to adopt §402B of the Restatement of Torts, 2d, as the law of this Commonwealth.

Section 402B provides: "§402B. Misrepresentation by Seller of Chattels to Consumer

"One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though (a) it is not made fraudulently or negligently, and (b) the consumer has not bought the chattel from or entered into any contractual relation with the seller."

It is unnecessary to decide at this time whether §402B should be the law of Pennsylvania. To this date,

[2] The advertising brochure is set out, in part, in the "History of the Case," *supra.*

our Supreme Court has neither adopted nor rejected §402B. A reading of the brochure, however, leaves no doubt that the brochure contains no misrepresentation *of a material fact.* The comment to §402B points out that this section is meant to expand common law misrepresentation, because liability is absolute despite the absence of an intent to defraud or negligence. This section "applies only to misrepresentations of material facts concerning the character or quality of the chattel in question. It does not apply to statements of opinion, and in particular it does not apply to the kind of loose general praise of wares sold which, on the part of the seller, is considered to be 'sales talk', and is commonly called 'puffing' . . ." comment g.

The content of the brochure is mere "puffing". There is no basis for imposing liability *solely* because of the advertising brochure. That is not to say, however, that the brochure is to be given no effect.

The brochure is intended for the nonprofessional. It is a colorful, persuasive "sale pitch," telling the nonprofessional that he or anyone can fly the B-2 and be "assured of a safe, dependable helicopter." When this advertising brochure is read together with the flight manual and placard, what effect is created? The question that the jury was required to answer is whether Mr. Berkebile was adequately forewarned of what, how, and how fast he had to act in the event of an emergency power failure. In order to arrive at an answer, the jury should have been instructed not only that they were to examine the flight manual and placard, but that they should weigh the effect of the advertising brochure on the issue of adequate safety warnings.

Such a weighing process has been directed by our Supreme Court in the prescription drug cases. In *Incollingo v. Ewing,* 444 Pa. 263, 282 A. 2d 206 (1971), the Supreme Court of Pennsylvania held that Parke, Davis, the manufacturer of chloromycetin, could be

strictly liable to the parents of the deceased minor, where the prescribing physician was misled by "detail men" who by their promotional techniques nullified the printed warnings accompanying the drug. The Court said at 444 Pa. 288-289: "We think that whether or not the warnings on the cartons, labels and literature of Parke, Davis in use in the relevant years were adequate, and whether or not the printed words of warning were in effect cancelled out and rendered meaningless in the light of the sales effort made by the detail men, were questions properly for the jury. *Action designed to stimulate the use of a potentially dangerous product must be considered in testing the adequacy of a warning as to when and how the product should not be used;* . . . ." (Emphasis added). See also, *Sterling Drug v. Yarrow*, 408 F. 2d 978 (8th Cir. 1969) ; *Pritchard v. Liggett & Myers Tobacco Co.*, 295 F. 2d 292 (3d Cir. 1961).

The jury should have been permitted to determine the impact of the advertising brochure on the directions and warnings provided to the pilot of the B-2.[3] With proper instruction carefully worded to impress upon the jury the requirement of adequate warnings and the legal consequences for failure to so warn, the jury could then arrive at an intelligent verdict based on the evidence and the law.

For the above stated reasons, the order and judgment of the lower court is reversed, and the case remanded for a new trial.[4]

---

[3] This might be additionally significant since defendant's chief test pilot, who wrote the flight manual and prepared the placard, testified that the omission of more detailed warnings was the result of instructions from defendant's executive vice-president to omit anything which might discourage customers or interfere with sales.

[4] The appellant contends that the trial court erred in the exclusion of certain evidence at time of trial. There appears to be no

WRIGHT, P. J. would affirm on the opinion of Judge CHUDOFF.

impropriety in the rulings of the trial judge with respect to the evidence offered by the appellant.