646 F.2d 90
 PRICE, Tyrone A., Appellee,
v.
INLAND OIL COMPANY, Amsco, Division of Union Carbide of California,
v.
SHELL OIL CO. and/or Shell Chemical Co. and Hanover Wire Cloth Co.
Appeal of AMSCO, DIVISION OF UNION OIL COMPANY OF
CALIFORNIA, Appellant.
 No. 80-1764.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 6, 1980.
Decided April 20, 1981.
 
 G. Wayne Renneisen (argued), Harvey, Pennington, Hearting & Renneisen, Ltd., Philadelphia, Pa., for appellant Amsco, Div. Union Oil Company of California.
 Joseph Lurie (argued), Galfand, Berger, Senesky, Lurie & March, Philadelphia, Pa., for appellee.
 Before HUNTER and GARTH, Circuit Judges and SAROKIN,* District Judge.
 OPINION OF THE COURT
 JAMES HUNTER, III, Circuit Judge:
 
 
 1
 This case arises from an unfortunate accident at the Hanover Wire Cloth Company on February 10, 1975. On that date, a Hanover employee, Tyrone Price, was seriously burned when his clothing, having been splashed with a flammable hydrocarbon substance known as "naphtha" or "mineral spirits," accidentally became ignited by a cigarette spark. Price brought suit against the supplier of the naphtha, appellant, Amsco, Division of Union Oil Company of California ("Amsco"), on both a negligence and strict liability theory.[1] During pre-trial proceedings, however, appellee narrowed the focus of his case to a cause of action under strict liability only. Nonetheless, the trial judge, following the jury's answers to special interrogatories, molded a verdict for the plaintiff based on negligence under Restatement (Second) of Torts, § 388 (Supp.1981). Because we find that negligence as a theory of liability was not properly before the court or jury, and that the jury's response to the special interrogatories clearly established that appellant was not liable under strict liability, we will vacate the district court's judgment and order judgment to be entered for the appellant.
 
 FACTS
 
 2
 Amsco supplied mineral spirits to Price's employer, Hanover Wire, for use as a cleaning solvent.[2] The deliveries were made in bulk, usually from a 1500 gallon Amsco tank truck.[3] They were pumped from the delivery tank into underground storage tanks, from which the Hanover employees could supply their departments.[4] Although "flammable" signs appeared on the delivery tank, Amsco did not supply "no smoking" signs for the areas in which the solvent was used. It did, however, supply safety data sheets to Hanover's safety director explaining the dangers of the mineral spirits. The employees, in turn, received safety booklets from Hanover, not Amsco. Price received a handbook warning him of the hazards of naphtha. Transcript of Proceedings at 131-32, reprinted in Appendix at 153a-54a. Nevertheless, one day after he finished cleaning some spools with the substance, he lit a cigarette. Immediately, he became engulfed in flames and suffered serious injuries.
 
 
 3
 Price brought suit in district court against Amsco. His complaint stated that "(his) injuries were caused by the defective and unreasonably dangerous condition of the solvent when it left defendant's control, in that it was not reasonably safe for those uses which could reasonably be foreseen," and that "(d)efendant wilfully and/or with gross negligence failed to warn plaintiff of said defect."[5] The parties attended five pre-trial settlement conferences; after each, the magistrate filed a report labeling the case simply as "Personal Injury Products Liability." Shortly before trial, when it became apparent that the parties would not settle, plaintiff's counsel filed a pretrial memorandum delineating strict liability as the only theory upon which plaintiff would proceed at trial. His pre-trial memorandum stated, "The plaintiff's theory of liability is based solely on section 402A of the Restatement of Torts 2d, that is interpreted by the Superior Court of Pennsylvania in the case of Berkebile v. Brantley Helicopter Corp., 225 Pa.Super. 349, 311 A.2d 140, 143." Both section 402A and Berkebile discuss only a strict liability theory for damages.
 
 
 4
 The court indicated that it would file a pre-trial order on Feb. 1, 1977 designating the issues and theories for trial.[6] It never did. Instead, the case proceeded directly to trial where plaintiff's counsel centered its case on Amsco's failure to provide adequate warnings on its product. Couching his questions in the language of section 402A,[7] plaintiff's counsel repeatedly asked his expert witness: "Do you have an opinion as to whether the mineral spirits were in a defective and unreasonably dangerous condition at the time they were sold?" Transcript of proceedings at 92, reprinted in Appendix at 114a. In his closing argument, he also argued that the "guts" of his case was the defective and unreasonably dangerous condition of the product at the time of its delivery. Transcript of Proceedings at 180, reprinted in Appendix at 202a. It is unclear from the record on what theory Amsco focused its defense. Amsco's rebuttal evidence was directed primarily at the adequacy of the warnings, however, as will be discussed later, this is an issue under either a negligence or strict liability theory. On appeal appellant contends that it defended the case only on a strict liability theory.
 
 
 5
 At the end of the trial, the court informed the parties that it planned to submit special interrogatories to the jury. It offered each side an opportunity to comment on its proposed instructions and recommend their own. The trial court would not consider, however, appellant's key objection to the instructions; that is, that negligence, as a theory of liability, was not argued at trial and therefore should not be presented to the jury.
 
 
 6
 The trial judge ultimately submitted the following four interrogatories to the jury:
 
 
 7
 1. Was the product (mineral spirits) in a defective and unreasonably dangerous condition at the time of delivery by the defendants by reason of inadequate warnings concerning flammability?2. If so, was the inadequacy of the warning concerning its flammability a proximate cause of plaintiff's injury?
 
 
 8
 3. Did the defendants know or should they have reasonably foreseen, that the product would be used by persons, that is, such as plaintiff, unaware of its flammability and of the hazards of smoking while using the product?
 
 
 9
 4. Was the plaintiff guilty of contributory negligence?
 
 
 10
 The first question, which in the circumstances of this case correctly posits the question of liability under Restatement (Second) of Torts § 402A, was answered by the jury in the negative. The third question, however, which represents one of the elements that must be proved to find the defendant negligent, was answered affirmatively.
 
 
 11
 The trial court molded the jury's answers to Interrogatories $ 1 and $ 3 into a judgment in favor of the plaintiff based on negligence under Restatement (Second) of Torts, § 388. Following the verdict, appellant moved for a judgment n. o. v. or, alternatively, for a new trial. It argued that (1) the trial court erred in submitting a negligence theory under Restatement (Second) of Torts, § 388 to the jury since there had been no prior indication that the case was being pursued on such a theory and appellant therefore had no opportunity to present defense evidence on the issue, and (2) that even if section 388 was a possible basis for liability, the jury's responses to the special interrogatories did not establish all of the elements requisite for the court's verdict.[8] The trial judge ruled against appellant on both issues.[9] We now address the first of these.
 
 DISCUSSION
 
 12
 A. Negligence Under § 388 & The Trial Court's Abuse of Discretion
 
 
 13
 While a trial judge has broad discretion to determine which issues may be pursued at trial, Moore v. Sylvania Electr. Products, Inc., 454 F.2d 81 (3d Cir. 1972), he should exercise that discretion with an eye toward the expectations of the parties. In the instant case, it is clear that the trial judge permitted a negligence theory under section 388 of the Restatement (Second) of Torts to be presented to the jury because he erroneously believed that he was required to do so under this court's holding in Dougherty v. Hooker Chemical Co., 540 F.2d 174 (3d Cir. 1976).[10] In Dougherty this court discussed in great detail a manufacturer's liability under section 388 for harm caused by a product lacking adequate warning of its dangerous propensities. Dougherty, 540 F.2d 178-82. The trial court in the instant case correctly found that Dougherty and section 388 could provide a possible basis for recovery.
 
 
 14
 Under § 388, liability arises when the seller, having reason to know that its product is likely to be dangerous for its intended use, and having no reason to believe that the intended user will realize its dangerous condition, nevertheless fails to exercise reasonable care to inform the user of the dangerous condition.
 
 
 15
 Dougherty, 540 F.2d at 177.
 
 
 16
 Therefore, if Amsco had supplied the naphtha knowing it to be dangerous and it had reason to believe that Price, the user of the product, would not realize its dangerous condition, and it failed to exercise reasonable care to inform him of its dangerous condition, then a jury could have found the appellant guilty of negligence.[11]
 
 
 17
 The problem in the instant case, however, is that appellee's counsel did not properly pursue the negligence theory. Rather, it limited itself by its pre-trial memorandum to a strict liability theory, under section 402A only.[12] The trial court's effort to resurrect appellee's negligence claim prejudiced the appellant and must be considered an abuse of discretion.
 
 
 18
 Ordinarily, the scope of a case will be limited by the trial court itself in a pre-trial order. Under F.R.Civ.P. 16,[13] the trial court may conduct pre-trial conferences and simplify in a pre-trial order the issues to be presented at trial. This order then supersedes the pleadings and directs the future course of the action. Theories of liability not raised pre-trial may be considered dropped from the case. Idzojtic v. Pennsylvania Railroad Co., 47 F.R.D. 25, 30 (W.D.Pa.1969) ("A 'theory' or 'position' of liability not asserted at the pre-trial conference or otherwise should be foreclosed at trial, for one of the primary purposes of pre-trial is the elimination of surprise and unfairness to the other side.").
 
 
 19
 On occasion, when the trial court has failed to file a pre-trial order, this court has still been willing to hold the parties bound by pre-trial representations. Specifically, in Knight v. Otis Elevator Co., 596 F.2d 84 (3d Cir. 1979), we held that a theory not directly in a party's pre-trial memoranda was appropriately excluded from argument at trial. We also noted in Anderson v. Republic Motor Inns, Inc., 444 F.2d 87 (3d Cir. 1971) that a pre-trial memorandum may limit the parties and the contentions which may be considered at trial.
 
 
 20
 Our willingness to bind a party by a pre-trial memorandum as well as a pre-trial order arises from our recognition that in almost one-third of the cases where pre-trial proceedings are conducted, the trial judge, as did the one in the instant case, fails to file a pre-trial order. 3 Moore's Federal Practice P 16.18, at 16-38 n.1; Report of the Proceedings of the Judicial Conference of the United States 79-80 (1962). In such cases, we believe it proper to look to the purpose of Rule 16 to determine whether the effect of the pre-trial negotiations was to limit the issues at trial.
 
 
 21
 "The chief purposes of the pre-trial conferences are to define and simplify the issues, to lessen surprise at trial and the risk of judicial error, to conclude stipulations on matters of evidence, and to promote settlements." 3 Moore's Federal Practice P 16.03. The courts have repeatedly focused on the element of surprise to determine whether it would be unjust to permit a party to argue a legal or factual theory at trial that had not been pursued in pre-trial procedures. See generally McCarthy v. Lerner Stores Corp., 9 F.R.D. 31 (D.C.Cir.1949). For example, in Mains v. United States, 508 F.2d 1251 (6th Cir. 1975), the court stated that "the pre-trial conference serves to expedite disposition of cases by simplifying the issues and eliminating surprise." Id. at 1259. See also Monod v. Future, Inc., 415 F.2d 1170 (10th Cir. 1969); Idzojtic, 47 F.R.D. at 30; Wiggins v. City of Philadelphia, 331 F.2d 521, 526 (3d Cir. 1964); Payne v. S.S. Nabob, 302 F.2d 803 (3d Cir. 1962) (party limited to voluntary admissions in pre-trial memorandum). In the instant case, the appellant claims that it was surprised to find that after a pre-trial memorandum had explicitly stated that the appellee sought recovery only under section 402A, the trial court was willing to submit a theory of negligence to the jury under section 388.
 
 
 22
 We accept appellant's argument. Although the trial judge may have believed that section 388 had been a theory of liability throughout the trial, its basis was not one that provided an adequate warning to the appellant of the theories against which it had to defend. This court did not hold in Dougherty that whenever the adequacy of the warnings is the key issue in a products liability case, both negligence and strict liability must be presumed to be theories of liability. Rather, we expressly noted that
 
 
 23
 The pre-trial order (in that case) limited the trial of liability solely to the issue of the adequacy of warnings , but in so doing, did not delineate any particular theory. In its oral opinion, the district court utilized language characteristic of strict liability and negligence theories. Similarly, the parties on appeal have made no effort to distinguish between either theory nor have they analyzed the cases which they have cited in terms of one theory or the other.
 
 
 24
 Dougherty, 540 F.2d 176 n.1 (emphasis added). By contrast, appellee in the instant case did focus only on one theory. His pre-trial memorandum explicitly stated that section 402A was the only theory of liability. Appellant reasonably based its defense on the last pre-trial indication of appellee's position. In the absence of a pre-trial order to the contrary, we must assume that the pre-trial memorandum represented the parties' and the court's consensus on the theory for liability. If the trial court was going to reject this position, it should have done so before trial. To do so after the submission of evidence, was an abuse of discretion. Section 388 was not properly at issue in the instant case and therefore could not provide a basis for liability.
 
 B. Strict Liability Under § 402A
 
 25
 Without section 388, the only theory for liability remaining in this case is strict liability under section 402A of the Restatement of Torts.[14] If, as it appears, the trial judge correctly charged the jury on section 402A, then the jury's answer to special interrogatory $ 1 eliminates that theory and judgment should be entered for the appellant.[15]
 
 Section 402A provides:
 
 26
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 
 
 27
 (a) the seller is engaged in the business of selling such a product and
 
 
 28
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 
 
 29
 Restatement (Second) of Torts, § 402A.[16] The Restatement continues:
 
 
 30
 (2) The rule stated in Subsection (1) applies although
 
 
 31
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 
 
 32
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
 
 
 33
 Id. At trial, appellee alleged that Amsco's product, naphtha, was defective and unreasonably dangerous because it lacked sufficient warnings of the product's flammability. The appellee argued that Amsco should have provided, in addition to the "flammable" signs on the delivery containers, "no smoking" signs for the areas in which naphtha was used.
 
 
 34
 Under the Restatement, inadequate warnings constitute a defect in a product and produce an unreasonably dangerous condition.[17] However, as we have noted in note 16 supra, even though Pennsylvania in 1966 adopted § 402A, the Pennsylvania Supreme Court subsequently deleted the term "unreasonably dangerous" from that Section. In other respects, Pennsylvania, in adopting the Restatement section, has yet to clarify its interpretation of the nature of the warnings in a case such as this one. Under circumstances such as are presented here, it has not specified whether a supplier will be required to provide specific warnings of its product's danger to all users into whose hands the product may fall.[18]
 
 
 35
 This court need not predict the future course of Pennsylvania tort law. In the instant case, the trial judge chose the outermost reaches of section 402A law for its interrogatory to the jury. Even if Pennsylvania would require the supplier to extend adequate warnings to the employee, special interrogatory $ 1 and the explanation by the court following it were broad enough to cover that theory of liability. Therefore, the jury's negative response to that interrogatory excluded the possibility of Amsco's liability under section 402A.
 
 
 36
 The trial judge began his interrogatories with the following question:
 
 
 37
 Was the product that is, mineral spirits in a defective condition at the time of delivery by the defendants by reason of inadequate warnings concerning its flammability?
 
 
 38
 Transcript of Proceedings at 202, reprinted in Appendix at 224a. On its face, this interrogatory presents only a narrow view of liability under section 402A; it focuses on a supplier's responsibility for the condition of its product at the time of delivery. However, at the conclusion of his charge, the jury was presented with a broader theory of section 402A liability. The district court informed the jury, with regard to Interrogatory $ 1, that
 
 
 39
 The plaintiff's theory of the case or one of the plaintiff's theories of the case is that in order to avoid this product being in a defective condition unreasonably dangerous to the user or consumer, the notice of its dangerous proclivities, the notice of its flammability and so forth should have been in such form that it would be appreciated by the ultimate consumer. And the question for you to resolve is: under the circumstances under which there (sic) deliveries were made who was the ultimate consumer? Were the defendants aware and should they have been aware that the product was being used by persons in the plant who would not be aware of its dangerous proclivities?
 
 
 40
 As I pointed out, this aspect of the case does overlap to a large extent the negligence aspect of the case and you could find the product unreasonably dangerous if you conclude that under all of the circumstances the form of the warning was inadequate to bring the relevant information to the attention of the ultimate user or consumer; and I leave all of those factual nuances and inferences for you to sort out and resolve on the basis of the evidence in the case.
 
 
 41
 Transcript of Proceedings at 240, reprinted in Appendix at 263a (emphasis added). The jury declined to find that even if adequate warnings must be supplied to the employee as "ultimate user," Amsco had breached this duty. Therefore, without deciding what theory of liability Pennsylvania would apply under section 402A, we are certain that under even the most expansive theory possible appellant was found not liable under section 402A.[19]
 
 CONCLUSION
 
 42
 The district court in this case erroneously awarded damages to the appellee. It was improper to award damages under a negligence theory because section 388, if ever raised as a basis for liability, had been abandoned during the pre-trial stages of the case. The district court also could not properly permit damages under a strict liability theory. Its first special interrogatory to the jury and the accompanying explanation presented a comprehensive question of liability under section 402A. The jury's answer to that interrogatory established that there was no liability under strict liability.
 
 
 43
 Accordingly, we must vacate the lower court's judgment and order that judgment be entered for the appellant.
 
 
 44
 SAROKIN, District Judge, dissenting and concurring:
 
 
 45
 I join in the opinion of the majority insofar as it concludes that the trial court erred in submitting the negligence theory to the jury. I dissent, however, from the majority's decision to enter judgment in favor of the appellant Amsco on the strict liability claim.
 
 
 46
 At the conclusion of the trial, the jury was instructed on two possible theories of liability: (1) negligence under § 388 of the Restatement (Second) of Torts and (2) strict liability under § 402A of the Restatement. In order to obtain a precise jury finding on the issue of strict liability, the trial court presented to the jury the following special interrogatory;
 
 
 47
 Was the product (mineral spirits) in a defective and unreasonably dangerous condition at the time of delivery by the defendants by reason of inadequate warnings concerning flammability?
 
 
 48
 As the majority recognizes, "on its face this interrogatory presents only a narrow view of liability under section 402A; it focuses on a supplier's responsibility for the condition of its product at the time of delivery." Maj. op. at 98. Therefore, the negative response given by the jury to the question posed relates only to the adequacy of the warnings given by the appellant Amsco to the purchaser at the time of sale. It is not a finding that Amsco fulfilled its duty to ensure that adequate warnings were given to the ultimate users of the product. The jury was not asked, and therefore did not decide, whether the warnings were adequate as to the purchaser's employees. If the law of Pennsylvania requires that the adequacy of warnings pertaining to dangerous products be evaluated in terms of the ultimate user,[1] then the jury was not asked to make a finding on one of the ultimate and critical issues in the case. For this reason, I would remand for a new trial on the issue of strict liability.
 
 
 49
 The interrogatory was framed in narrow terms consistent with the trial court's belief that under § 402A, a supplier could not be strictly liable if the warnings given to the purchaser at the time of delivery were sufficient to alert the purchaser of any dangers involved in using the product. That the trial court viewed § 402A in this manner is evidenced by the court's statement in molding the verdict:
 
 
 50
 "It was and is my view that § 402A was not really implicated in this case, since adequate warnings were given to the purchaser at or before the time of delivery, and therefore the product was not 'defective.' "
 
 
 51
 App. at 306a. Further, this same limited view of strict liability is reflected throughout the instructions to the jury. For example, the court charged the jury that:
 
 
 52
 "on this phase of the case you would analyze the situation as it existed when the mineral spirits were delivered by the defendants to the plaintiff's employer You would ask yourselves: do you conclude from those circumstances and from the other evidence in the case that Hanover Wire Works whatever the name of the employer is knew full well the dangerous characteristics of the mineral spirits?
 
 
 53
 If you conclude that at the time the product was delivered to the plaintiff's employer no warnings had been given that were adequate concerning the dangerous propensities of this product, in short, while there may have been some general awareness on the part of the employer as to the characteristics of this material, they did not realize that it was dangerous to smoke near it or when you had it splashed on your clothes, then you would have the right to conclude that there would be liability for a defective product."
 
 
 54
 App. at 248a-249a (emphasis added). Later in the charge, the trial court stated that:
 
 
 55
 "When we talk about inadequate warnings, we are talking about the sum total of information known by the employer, Hanover Wire Cloth, at the time of delivery."
 
 
 56
 Id. at 255a (emphasis added).
 
 
 57
 When the jury reported its response to the aforesaid interrogatory, the trial judge interpreted the response in accordance with his charge and his view of § 402A:
 
 
 58
 "I think that the answer to interrogatory No. 1 on the 402A theory relates to the adequacy of warnings given by the seller to the purchaser at the time of sale. It would not necessarily relate to periods subsequent to the delivery and also it would not necessarily encompass the adequacy of warnings as extended to the employees of the purchaser."
 
 
 59
 App. at 274a (emphasis added). In the trial judge's opinion, the jury was not asked to consider, and therefore did not determine, the adequacy of Amsco's warnings vis-a-vis the employees.
 
 
 60
 The mere absence of a question on an ultimate issue from a set of special interrogatories does not without more require a new trial. A finding not made by the jury on an ultimate issue can be made by the trial court. Fed.R.Civ.P. 49(a). If the trial court does not make such a finding, the judgment entered by the trial court may be deemed to encompass all the necessary ingredients to support the judgment. John R. Lewis Inc. v. Newman, 446 F.2d 800, 806 (5th Cir. 1971); C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc., 368 F.Supp. 501, 510 (E.D.Pa.1973). In this case, however, the trial judge did not answer the question that was left unanswered by the jury, viz. whether or not Amsco fulfilled its duty to warn of the dangers inhering in its product with respect to the ultimate users. In fact, the trial judge indicated that the jury, if asked, could have found for the plaintiff on this issue:
 
 
 61
 "From the evidence as a whole, the jury could conceivably have reached a rational determination that the defendant should have been aware that the employer's warnings to its employees were inadequate."
 
 
 62
 App. at 305a. Therefore, it cannot be said that the omission of an ultimate question from the special interrogatories was cured, expressly or impliedly, by the findings of the trial court. To the contrary, the statements of the trial court indicate that if § 402A required the warnings to be adequate as to the ultimate users, then the plaintiff could have prevailed. In light of the trial court's evaluation of the evidence, it would be improper to conclude that either the jury or the court made the necessary finding to support a judgment in favor of the defendant.
 
 
 63
 Nor is the omission cured by the court's charge, as the majority suggests. Despite the trial court's conclusion that the jury could have found for the plaintiff on this issue if it had been asked, the majority has decided that judgment for the appellant Amsco is proper on the § 402A claim. This decision rests upon a portion of the charge given to the jury, which is said to cure any defect in or omission from the interrogatories. That portion of the charge reads as follows:
 
 
 64
 "The plaintiff's theory of the case or one of the plaintiff's theories of the case is that in order to avoid this product being in a defective condition unreasonably dangerous to the user or consumer, the notice of its dangerous proclivities, the notice of its flammability and so forth should have been in such form that it would be appreciated by the ultimate consumer. And the question for you to resolve is: under the circumstances under which these deliveries were made who was the ultimate consumer? Were the defendants aware and should they have been aware that the product was being used by persons in the plant would not be aware of its dangerous proclivities?
 
 
 65
 As I pointed out, this aspect of the case does overlap to a large extent the negligence aspect of the case and you could find the product unreasonably dangerous if you conclude that under all of the circumstances the form of the warning was inadequate to bring the relevant information to the attention of the ultimate user or consumer; and I leave all of those factual nuances and inferences for you to sort out and resolve on the basis of the evidence in case."
 
 
 66
 App. at 263a. (emphasis added). Although this portion of the charge does give to the jury a broader theory of liability under § 402A, at no time was the jury informed that this charge was to be considered in reaching a decision on Interrogatory $ 1. In fact, the language of this portion of the charge more closely tracks the language and the approach in Interrogatory $ 3:
 
 
 67
 "Did the defendants know or should they have reasonably foreseen, that the product would be used by persons, that is, such as plaintiff, unaware of its flammability and of the hazards of smoking while using the product?"
 
 
 68
 Therefore, it is more probable that the jury considered this supplemental charge in answering Interrogatory $ 3, rather than Interrogatory $ 1.[2]
 
 
 69
 Even if there were no confusion as to the scope of the § 402A charge, (which there is) the direction does not furnish the answer. If the jury received the proper instruction, it is pure speculation as to how they resolved it. Neither this court nor the trial court can conclude that the warnings to the employees were adequate, because the jury has never spoken on that issue. In the absence of such a finding, no judgment should be entered.
 
 
 70
 Therefore, if Pennsylvania law requires that the adequacy of warnings under § 402A be evaluated in terms of the ultimate user, then a jury should be afforded the opportunity to decide that question, and accordingly a remand for a new trial on the issue of strict liability is required.
 
 
 
 *
 Honorable H. Lee Sarokin, of the United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 Price also brought suit against co-defendant, Inland Oil Co. Inland is not a party to this appeal; it settled with appellee and executed a joint tort-feasor release after the trial. District Court Memorandum and Order at 1 n.1, reprinted in Appendix at 303a
 
 
 [2]
 Hanover Wire is not a party to this action. Recovery against Hanover Wire was limited to benefits under the workmen's compensation and occupational safety laws
 
 
 [3]
 The record indicates that at times deliveries were made in 55 gallon drums. The drums contained warning labels stating "PETROLEUM NAPHTHA" and "COMBUSTIBLE LIQUID." There is no indication, however, that the appellee, Price, ever saw such warnings
 
 
 [4]
 Hanover had exclusive control over the work place and the storage of the naphtha
 
 
 [5]
 Plaintiff's complaint at 2, reprinted in Appendix at 6a
 
 
 [6]
 Pre-trial Report by U.S. Magistrate Richard A. Powers, III (Dec. 14, 1976)
 
 
 [7]
 Section 402A, in pertinent part, provides:
 (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 (a) the seller is engaged in the business of selling such a product and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
 Restatement (Second) of Torts, § 402A (Supp.1981) (emphasis added).
 
 
 [8]
 See note 11 infra
 
 
 [9]
 Since the denial of a motion for judgment n. o. v. is not an appealable order, State National Bank of El Paso v. United States, 488 F.2d 890 (5th Cir. 1974); Dostal v. Baltimore & Ohio R.R. Co., 170 F.2d 116 (3d Cir. 1948), this court will treat Inland Oil's appeal as an appeal from the entry of judgment on the verdict. See Gray v. General Motors Corp., 434 F.2d 110 (8th Cir. 1970). Nonetheless, we are limited by the same standard of review that bound the district court when it considered Amsco's motion for judgment n. o. v. 5A Moore's Federal Practice P 50.15. We must view the evidence and all inferences from it in a light most favorable to Price, the party against whom the motion was made. Samuels v. Health & Hospital Corp., 591 F.2d 195 (2d Cir. 1979); Fireman's Fund Ins. Co. v. Videfreeze Corp., 540 F.2d 1171, 1178 (3d Cir. 1976)
 
 
 [10]
 The trial court stated to counsel at the close of evidence:
 The Court: Now I invite counsel to suggest interrogatories to be submitted to the jury to resolve the factual issues in the case.
 I will state, I am not at all sure what the factual issues are and I will explain why I have difficulties. So far as I am concerned the only reason this case goes to the jury is because of the Third Circuit decision in Dougherty v. Hooker Oil.
 Transcript of Proceedings at 162-63, reprinted in Appendix at 184a-85a. Following the charge to jury, the court further explained to appellant's counsel its reason for submitting the § 388 theory to the jury.
 Mr. Renneisen: I recognize why you charged on 388, but I believe the plaintiff's counsel stated repeatedly he was only proceeding on a 402A.
 The Court: I know, I am trying to do him a favor and myself a favor by not having to try the case twice.
 Mr. Renneisen: I understand that, but I except to that charge. That is all I have.
 Transcript of Proceedings at 239, reprinted in Appendix at 262a.
 
 
 [11]
 We note in response to appellant's second contention, see text accompanying note 9 supra, that the jury was never asked two of the three section 388 elements: (1) whether Amsco knew or should have known that the naphtha was likely to be dangerous in the use for which it was supplied, and (2) whether Amsco used reasonable care to inform the user of its dangerous condition. Although Amsco admitted that it knew naphtha was dangerous even in its proper usage, the reasonableness of its care in informing the users of the product's danger, part (c) of section 388, remained at issue in the case. Accordingly, it should have been included in the special interrogatories. Without a finding that appellee failed to use reasonable care to inform the user of the naphtha of its dangers, it was error for the trial court to mold a section 388 verdict. See Dougherty, 540 F.2d at 179
 
 
 [12]
 Furthermore, although appellee's complaint did allege negligence, it made no mention of section 388 and the pertinent language cited therein. As the trial court succinctly noted: "(P)laintiff is at pains to say the only theory he wants to go to the jury is 402A and he is not doing it on any other theory." Transcript of Proceedings at 163, reprinted in Appendix at 185a
 
 
 [13]
 F.R.Civ.P. 16 provides:
 In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider
 (1) The simplification of the issues;
 (2) The necessity or desirability of amendments to the pleadings;
 (3) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;
 (4) The limitation of the number of expert witnesses;
 (5) The advisability of a preliminary reference of issues to a master for findings to be used as evidence when the trial is to be by jury;
 (6) Such other matters as may aid in the disposition of the action.
 The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice.
 
 
 [14]
 Section 402A of the Restatement (Second) of Torts was adopted by Pennsylvania Supreme Court as the law of Pennsylvania in Webb v. Zern, 422 Pa. 424, 220 A.2d 853, 854 (1966). But see Azzarello v. Black Bros. Co., 480 Pa. 547, 391 A.2d 1020 (1978)
 
 
 [15]
 Appellee admits in his brief that Interrogatories $ 1 and $ 3 address separate theories of liability:
 Specifically, the first Interrogatory was framed in terms of Section 402A of the Restatement of Torts 2nd while the third Interrogatory was framed in terms of Section 388 of the Restatement of Torts 2nd. The first Interrogatory spoke only in terms of the product being defective and unreasonably dangerous at the time of delivery by reason of inadequate warnings concerning flammability. The Jury by answering in the negative found that indeed the product was not defective at time of delivery as to inadequate warnings concerning flammability. However, in answering the third Interrogatory in the affirmative, the Jury found that the defendants, under a negligence standard, failed to reasonably foresee that the product would be used by persons such as the instant appellee who would be unaware of flammability and of the hazards of smoking while using the product.
 Appellee's Brief at 29 (emphasis in original). Therefore, we need not address the issue of whether the jury's answer to Interrogatory $ 3 may have suggested some possible ground for liability under section 402A.
 
 
 [16]
 In 1978 the Pennsylvania Supreme Court dropped from its § 402A doctrine the term "unreasonably dangerous." Azzarello v. Black Bros. Co., 480 Pa. 547, 391 A.2d 1020 (1978). Thus, to this extent, Pennsylvania's formulation of strict liability under § 402A does not track that of the Restatement
 
 
 [17]
 See Comment h to section 402A which clarifies that a product, as to which adequate warning of danger involved in its use is required, sold without such warning is in a "defective condition." Comment j states that "in order to prevent the product from being unreasonably dangerous, the seller may be required to put directions or warning, on the container, as to its use. See also Incollingo v. Ewing, 444 Pa. 263, 299, 282 A.2d 209, 219-30 (1971)
 
 
 [18]
 But see Pegg v. General Motors Corp., 391 A.2d 1074, 1083 (Sup.Ct.Pa.1978)
 
 
 [19]
 The dissent argues persuasively that the 402A interrogatory (Interrogatory 1) was improperly framed and that the corrective charge was ambiguous in that the jury was not specifically instructed that the corrective charge pertained to Interrogatory 1 and not to Interrogatory 3 (§ 388 claim). The short answer to both of these arguments is that at no time did the plaintiff object either to the form of the interrogatory or to the language or the specificity of the corrective charge. We must assume therefore that insofar as the plaintiff was concerned, both the interrogatory and the corrective charge met with his satisfaction. See Fed.R.Civ.P. 49(a); 51. Had the plaintiff believed that the charge was ambiguous or did not relate to the interrogatory, or that the interrogatory was incorrect, there was ample opportunity to except. No such exceptions were taken. Indeed, no cross appeal was ever filed claiming that the jury's verdict on the 402A claim should be reversed. Thus we are satisfied that the jury's verdict with respect to Interrogatory 1 (§ 402A claim) should be upheld
 
 
 [1]
 Support for the view that Pennsylvania law requires that warnings must be considered with regard to the ultimate user is found in Azzarello v. Black Bros. Co., 480 Pa. 547, 391 A.2d 1020 (Pa.1978), Pegg v. General Motors Corp., 391 A.2d 1074 (Sup.Ct.Pa.1978), and the Comments to § 402A of the Restatement (Second) of Torts
 
 
 [2]
 The trial judge stated that in his view, the question omitted from Interrogatory $ 1 was in fact answered in Interrogatory $ 3:
 "It may be that there can be liability under § 402A itself, notwithstanding the adequacy of warnings to the purchaser, if the warnings to the purchaser's employees are likely to be inadequate This latter set of issues was presented to the jury as of § 388 question "
 The reference to "a § 388 question" refers to Interrogatory $ 3.