Massachusetts Bonding & Ins. Co., Appellant, *v.* Johnston & Harder, Inc., Appellant, et al.

Argued October 1, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, PATTERSON and PARKER, JJ.

*T. F. Ryan,* with him *Joseph H. Bialas,* of *Bialas & Ryan,* for appellant No. 170 and appellee No. 185.

*H. Stewart Dunn,* with him *Wm. G. Bechman, Roy Rose, Con. F. McGregor, Bechman, Dunn, Parker & McGregor* and *E. G. Bothwell,* for appellee No. 170 and appellant No. 185.

OPINION BY MR. JUSTICE MAXEY, November 24, 1941:

This case has been before this court twice before, and the facts are fully stated in our opinions filed in those appeals: See 330 Pa. 336, 199 A. 216, and 340 Pa. 253, 16 A. 2d 444. In the opinion filed on November 25, 1940, when this case was last before us, prior to the present appeal, we said, inter alia, "The basic contested question in this case is whether the defendant, Johnston & Harder, Inc., is entitled to an accounting from the plaintiff. That depends on whether or not the plaintiff was legally justified in cancelling the contract summarily. If it was, J-H can claim against the plaintiff no damages for its cancellation. If it was *not,* its right to damages is clear and the amount of such damages would be

a matter of proof. If such damages were proved, they would be a factor in the final disposition of this case, which originated, as already stated, in plaintiff's claim for an accounting of plaintiff's insurance business transacted for it by the defendant counter-claimant. As to what justification, if any, there was for the cancellation of the contract, the adjudication is silent." In the decree appealed from in the second appeal, the court below reversing its former ruling concluded as a matter of law that the plaintiff "had the right to cancel its general agency contract with the defendant, Johnston & Harder, Inc. on February 3, 1936." In a decree nisi it was ordered (1) that the prayer of Johnston & Harder, Inc., the defendant, for affirmative relief be disallowed, and (2) that the balance of the fund of $15,531.72 less poundage and the record costs of this proceeding is directed to be paid to "plaintiff or its attorneys of record".

On account of the inadequacy of the findings of fact in the adjudication, the decree of the court below was reversed and the record was "remitted to the court below for further proceedings in accordance with this opinion". In that opinion we upheld the complaint of Johnston & Harding, Inc., that the court in banc failed to perform the duty prescribed by Equity Rule 71 which provides, inter alia, that "exceptions which aver that the chancellor's adjudication fails to make substantial disposition of requests for findings of fact, must be answered specifically by findings, refusing to find, or qualifying the facts alleged, and not be a simple refusal of the request."

Without further formal proceedings in the court below, that court filed an opinion on July 8, 1941, holding that the contract in question was illegally breached and awarded damages to the defendant, Johnston & Harder, Inc. in the sum of $35,000 on its claim for affirmative relief which it made under Equity Rule 52. The court below withdrew its three former conclusions of law and "substituted" the following: "(1) The cancellation of

the general agency contract . . . was in breach of the contract existing between said parties at the time of said cancellation. (2) The illegal summary cancellation of said contract . . . caused damages to the said Johnston & Harder, Inc. of valuable, tangible and intangible assets salable in the investment market at the time of said illegal termination of said contract. (3) That the damage sustained by Johnston & Harder, Inc. is in the sum of $35,000 including detention money or interest."

The court below then entered a "supplemental final decree" vacating its final decree of June 21, 1940, entered judgment in favor of Johnston & Harder, Inc. and against the plaintiff in the sum of $35,000 and directed that the former "have a first lien on the funds impounded in the registry of this court". Costs were placed on the plaintiff.

Plaintiff took this appeal. It complains that "no specific facts whatsoever are found by the court below in this 'opinion' ". It complains because the court below "without any specific facts being found or stated conclusively says 'the illegal cancellation took away or destroyed tangible and intangible assets . . .' without showing what these 'assets' are or how they were 'taken away' or 'destroyed' ". Appellant says "No exceptions were before the court in banc nor had opportunity been afforded for submission of any such. The distinction now was actually a reversal of the prior adjudication accomplished by an 'opinion', thus apparently resulting in the entire absence of any formal adjudication as required by the equity rules".

Appellant on July 10, 1941, filed a "petition to amend record", alleging, inter alia, ". . . The court vacates one or more of its findings of fact and vacates the original conclusions of law substituting therefor other findings of fact, new conclusions of law and an entirely different decree, being expressly a final decree. In so doing it appears that the court acted upon reserved rulings adversely to plaintiff, and similarly upon requests and

other matters. That under all the foregoing plaintiff has been afforded no right or opportunity to file exceptions, among the subjects for presentment thereby but not exclusive of others being trial rulings, findings of fact, and failure to make substantial disposition of requests for findings of fact. Under the equity rules all objections not covered by specific exceptions are deemed to be waived and actually whatever objections plaintiff might have were never before the court as the subject matter of consideration or disposition by it. Leave is requested to file later as part thereof specification of such objections and exceptions. That such result is assuredly unintended but if allowed to stand would prove highly inequitable as well as prejudicial to the rights of plaintiff and would serve to foreclose many matters which as aforesaid have not been passed upon by the court formally. That in all fairness and equity the action taken July 8, 1941, should be amended so as to be marked and entered as a 'supplemental adjudication including decree nisi' or some such equivalent so that it be recorded with the effect of having been entered by the Chancellor with leave to either party to file exceptions thereto within a reasonable time for disposition by the court en banc under and in accordance with the equity rules and with stay of all proceedings in the meanwhile." Appellant then prayed "that the record of this case be so amended as to constitute the action entered July 8, 1941, a 'supplemental adjudication containing decree nisi' or some such equivalent so that it be recorded with the effect of being entered by the Chancellor with leave to either party to file exceptions thereto within a reasonable time for disposition by the court en banc according to law and with stay of all further proceedings in the meanwhile." Appellant then asked for a rule to show cause why the petition to amend record should not be allowed.

On July 14, 1941, the court below filed a memorandum refusing the rule to show cause. In its memorandum the court said: "It is our construction that the Su-

preme Court referred this case back to the Court en banc, rather than to the Trial Chancellor, to make proper disposition of it in accordance with the interpretation of the contract between the parties as outlined in the Opinion of the Supreme Court, speaking through Mr. Justice MAXEY. The new Findings of Fact and Conclusions of Law set forth in the Opinion of July 8, 1941, are based not on direct evidence but on fair inferences deducted from all of the evidence submitted by both parties to the proceeding. Our appellate Courts have stated many times that they will not interfere with Findings of Fact based upon the evidence. However, they have never surrendered their right to remould or even to make new Findings of Fact when based upon fair inferences to be drawn from the evidence. This same power has also been lodged with a Court en banc, after exceptions have been filed to the Findings, etc., of a Trial Chancellor. We are of the opinion and counsel for the defendant, J & H, are in full agreement that the whole record again comes before the Supreme Court on appeal and that counsel for the plaintiff company will not be limited or circumscribed in raising any legitimate question, so that substantial justice may be done in this case."

The complaint of the appellant is well founded. The decree appealed from is characterized by an arbitrariness which has no place in due judicial process. The court declares that the plaintiff's cancellation of its contract with Johnston & Harder, Inc. without notice "was a breach of said agreement". There is in the court's opinion on this important phase of the case an entire absence of that "discussion of the questions of fact and law involved" which our Equity Rule 67 requires.

The court below awards damages to Johnston & Harder, Inc. "in the sum of $35,000," including detention money and interest. As to how this sum was determined the opinion does not enlighten us. The opinion says: "A witness called by the plaintiff Company admitted that if thirty-days notice had been given to J-H,

that it still had an asset salable in the open market because, being perfectly solvent, it would have no difficulty, with its long experience, its expiration lists, its organization and contacts to obtain a general agency contract with another financially substantial surety and insurance company." The statement just quoted cannot be said to measure up to a discussion of "the questions of fact and law involved" in the matter of damages claimed by Johnston & Harder, Inc.

The only adjudication by a chancellor which preceded the court's opinion of July 8, 1941, was the adjudication of Judge KENNEDY filed March 2, 1940, on which was based the opinion and decree of June 21, 1940, which was appealed to this court and it was to this appeal our order of November 25, 1940, related. The chancellor in his adjudication of March 2, 1940, completely disallowed Johnston & Harder, Inc. the affirmative relief prayed for. Plaintiff, having won its case before the chancellor, had no occasion to file exceptions to the findings and conclusions of the chancellor under Equity Rule 69, except to certain minor matters such as the award of $650 to the attorneys for the stockholders in the case. In its final decree of June 21, 1940, the court below stated: "It is our conclusion that the adjudication should not be modified or disturbed".

The record thus presents the anomalous situation of the court below without referring the matter back to the chancellor for "further proceedings" in conformity with the opinion of the Supreme Court, including the opportunity to the parties to file exceptions to the chancellor's adjudication, making a final disposition of the important issues involved without the losing party (or either party) having any opportunity to file exceptions to the findings and conclusions on which the final decree was based. In fact, it appears that there was no argument before the court in banc on the questions involved in this case, after an opinion was handed down in the second appeal. What happened was that the court which previously had de-

cided the issues in favor of the plaintiff now summarily decided the issue in favor of the defendant counterclaimant. The "day in court" which plaintiff was clearly entitled to in that stage of the case was denied it. It was also denied the defendant, Johnston & Harder, Inc., but since the decree was in its favor it is not complaining.

The "further proceedings" for which we remitted the record to the court below in our order of November 25, 1940, were intended to be proceedings in accordance with our opinion and in accordance with Equity Rule 71 whose mandate we said "is unambiguous and must be complied with". We add that all the other applicable equity rules must be complied with and both parties must have their "day in court" in accordance with the elementary requirements of "due process". When the court below after having the record returned to it for further proceedings decided to completely reverse its former conclusions, it would have been proper to refer the entire matter back to the chancellor so that the adjudication should have been de novo in accordance with our opinion. That would have enabled each party to file exceptions to the new findings and conclusions of the chancellor under Equity Rule 69, and would also have enabled each party to argue the exceptions before the court en banc pursuant to Equity Rule 71. This court said in its first opinion filed in this case, 330 Pa. 336, 339, 199 A. 216: "Equity having assumed jurisdiction over a cause of action will retain it for the purpose of effecting complete justice between the parties . . .". If in the instant case it is desirable that further testimony be taken in the interest of a more accurate adjudication, that is a matter within the discretion of the court below. Storey's Equity Jurisprudence, 14 ed., vol. 1, sec. 28, says of courts of equity: "Although they have prescribed forms of proceeding, the latter are flexible and may be suited to the different postures of cases . . . they may . . . model the remedy so as to suit it to mutual and adverse claims, controlling equities, and the real and substantial rights of the parties".

If it becomes the duty of the court below to award damages for breach of contract, it must be kept in mind that no more can be recovered as damages than will fully compensate the party injured. There is no formula by which this amount can be determined with mathematical precision. In *Weinglass v. Gibson,* 304 Pa. 203, 207, 155 A. 439, in an opinion by the present Chief Justice we said: "Where there is a basis in the evidence for a reasonable computation of the damages suffered considering the nature of the transaction, a verdict may be based thereon, though there may be involved some uncertainty about it: *Singer Mfg. Co. v. Christian,* 211 Pa. 534; *Jessup & Moore Paper Co. v. Bryant Paper Co.,* 297 Pa. 483; *Wilson v. Wernwag,* 217 Pa. 82". In the case last cited this court quoted with implied approval the following: "In *Ætna Life Insurance Co. v. Nexsen* (Ind.), 43 Am. Rep. 91 and in *Lewis v. Atlas Mutual Life Insurance Co.,* 61 Mo. 534, it was held that an insurance agent who had been discharged without cause could recover the probable value of renewals on policies previously obtained by him upon which future premiums would, in the usual course of business, be received by the company. . . . In *Brigham v. Carlisle* (Ala.), 56 Am. Rep. 28, CLOPTON, J., delivering the opinion, says: 'When they (profits) form an elemental constituent of the contract, their loss, the natural result of its breach, and the amount can be estimated with reasonable certainty, such certainty as satisfies the mind of a prudent and impartial person, they are allowed. . . .' " In *Macan v. Scandinavia Belting Co.,* 264 Pa. 384, 392, 107 A. 750, which was an action for breach of an exclusive sales agency contract, this court said: "The measure of damages in a case of this class is the value of the contract at the time of its breach, and if it reasonably appears that profits would be realized if the contract were carried out, and that the loss of such benefits necessarily followed the breach, their amount may constitute the true measure of damages: *Wilson v. Wernwag,* 217 Pa. 82; *Press Pub. Co. v. Read-*

*ing News Agency*, 44 Pa. Superior Ct. 428." In *Oster-ling v. Frick et al., Executors*, 284 Pa. 397, 131 A. 250, this court held [second syllabus] : "While damages cannot be based on a mere guess or speculation, yet where the amount may be fairly estimated from the evidence, a recovery will be sustained even though such amount cannot be determined with entire accuracy". In *Western Show Company, Inc., v. Mix*, 315 Pa. 139, 173 A. 183, this court held [second syllabus] : "Where there is no other 'reasonably safe basis' for measuring the substantial damages which a plaintiff has suffered by reason of defendant's breach of his contract, expert testimony may, if obtainable, be utilized for the purpose."

Williston on Contracts, Revised Edition, Vol. 5, lays down these principles in respect to measuring damages : Section 1345, p. 3776, "Though any breach of contract entitles the injured party at least to nominal damages, he cannot recover more without establishing a basis for an inference of fact that he has been actually damaged. A mere possibility that the plaintiff might have made a profit if the defendant had kept his contract will not justify damages based on the assumption that the profit would have been made. But though there must be evidence of substantial damage in order to justify recovery of more than a nominal sum, the exact amount need not be shown. Where substantial damage has been suffered, the impossibility of proving its precise limits is no reason for denying substantial damages altogether." Section 1346A, p. 3781: "Various methods are used in proving prospective profits. These methods are not mutually exclusive, but often one method is more feasible than others. (1) . . . (2) Evidence of past profits in an established business furnish a reasonable basis for estimating future profits. (3) Profits made by others or by the plaintiff himself in a similar business or under a similar contract, where the facts were not greatly different may also afford a reasonable inference of the plaintiff's loss. (4) The evidence of experts if based on anything more than

individual opinion or conjecture has also been admitted." Williston also says, section 1346, p. 3781: "Where a breach of contract involves deprivation of a chance which has value in a business sense, a just reluctance will be felt by most courts to deny altogether the recovery of substantial damages".

The essence of the legal principles above cited is that compensation for breach of contract cannot be justly refused because proof of the exact amount of loss is not produced, for there is judicial recognition of the difficulty or even impossibility of the production of such proof. What the law does require in cases of this character is that the evidence shall with a fair degree of probability establish a basis for the assessment of damages.

The decree of the court below is reversed and the record is remitted to the court below for further proceedings in accordance with this opinion; costs to abide the final disposition of the case.