**DRAFT SYSTEMS, INC.**

v.

**RIMAR MANUFACTURING, INC.**

Civ. A. No. 77–2557.

United States District Court,
E. D. Pennsylvania.

Oct. 9, 1981.

Hyman Lovitz, Philadelphia, Pa., for plaintiff.

Bennett, Bricklin & Saltzburg, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

JOHN MORGAN DAVIS, Senior District Judge.

After a jury trial in this contract action, a verdict was returned for the plaintiff, Draft Systems Inc., in the amount of $409,-184.16. Before the court are defendant's motions for judgment n. o. v. and for a new trial which in substance challenge the sufficiency of the evidence in support of the

award of damages.[1] After careful consideration of these motions, I have concluded that the arguments raised therein are without merit, and they are denied accordingly.[2]

Plaintiff, Draft Systems, is engaged in the business of manufacturing a type of dispensing unit used on beer kegs. TR. 2.67–8. This beer dispensing unit consists essentially of two component parts—a double valve and a syphon tube. TR. 2–12. One component part, the syphon tube, which is approximately eighteen inches in length and made of graded nylon, was supplied by the defendant, Rimar Manufacturing, Inc. TR. 2.23. Throughout 1974 the plaintiff submitted purchase orders for various amounts of nylon 11 or nylon 2908L tubing to the defendant. TR. 2.27–33. In August 1975 the defendant filled the aforesaid orders by shipping the required amounts to the plaintiff. After the inspection of the amount of goods and specifications of the tubing, including a check of the accompanying documents which certified that the tubing was actually nylon 11, the plaintiff accepted the goods and began using them in its manufacturing process. TR. 2.28–40. Some months later, the plaintiff began receiving complaints from beer distributors that the dispensing mechanism was not functioning properly. It was later determined that the defendant forwarded a different grade of tubing, nylon 6, rather than the nylon 11 specified in the purchase orders and blueprints supplied by plaintiff. TR. 3.59. Expert testimony established that because of the higher liquid absorption rate of nylon 6 tubing contrasted with the absorption rate of nylon 11, an excessive amount of beer was absorbed by the nylon 6 tubing. This excessive absorption caused the internal diameter of the tubing to expand, thus, breaking the seal between the tubing and the metal portion of the dispensing unit to which the tubing was attached. TR. 3.71. It was theorized that, after carbon dioxide was pumped into the keg in order to force beer from it—i. e. drafting the beer—carbon dioxide entered the beer stream through the broken seal; this created a condition known as "wild beer" which was unfit for consumption.

The jury, by interrogatories, found that the defendant breached the express, and implied warranties of merchantability and fitness for a particular purpose which were incorporated into the contract. In its post trial motions, defendant presents a myriad of claims for relief from the judgment against it. I now turn to these contentions.

Preliminarily, defendant vigorously contends that all items of consequential damages should be excluded from the verdict because the evidence is insufficient to support the jury award. More specifically, it asserts that the proof failed to demonstrate that defendant had any knowledge concerning the particular requirement of the contract that the nylon tubing supplied could not have a liquid absorption rate in excess of that of nylon 11.[3] This argument, however, misconceives the nature of consequential damages.

1. The defendant concedes contract liability based on breach of warranty both express and implied. Defendant's brief at 2–3; Oral argument at 3. In any event, I find that the record contains more than sufficient evidence to support the jury's finding of liability in this case.

2. The court is cognizant of the differing functions of the trial judge in analyzing a challenge to the sufficiency of the evidence on motions for judgment n. o. v. and for a new trial. *Zegan v. Central Railroad Co. of New Jersey*, 266 F.2d 101, 104 (3rd Cir. 1959). See also, *Black v. Stephens*, 662 F.2d 181 (3rd Cir. 1981); 5 A Moore's Federal Practice ¶ 50.03[2]; C. Wright and A. Miller, Federal Practice and Procedure § 2531. Under the relevant standards, I find that the evidence adduced at trial is quantitatively sufficient to support the jury's damage award and that the verdict is not contrary to the clear weight of the credible evidence. Necessarily then, submission of the damage issue to the jury was proper and a new trial is not warranted.

3. Defendant places primary reliance on comment 3 of § 2–715(2) of the U.C.C. which is now codified at 13 Pa.Con.Stat.Ann. § 2715(b) (1980). In pertinent part section 2–715(2) of the Code states:

(a) Consequential damages resulting from the seller's breach include any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise.

The seminal case in Pennsylvania on the ability of a contractee to recover consequential damages is *R. I. Lampus Co. v. Neville Cement, Etc.*, 474 Pa. 199, 378 A.2d 288 (1977). *Lampus* rejected the long standing tacit-agreement rule as the measure of consequential damages. As stated by the court, "[u]nder Section 2–715(2), consequential damages are proper for any loss resulting from general or particular requirements and needs of which the seller at the time of contracting *had reason to know* and which could not reasonably be prevented by cover or otherwise." *Id.* at 206–07, 378 A.2d at 291 (emphasis in original). The rule enunciated by the court embodies the less restrictive reasonably foreseeable test which has been espoused by Professor Corbin.[4] Thus, "[a]ll that is required is that the seller *have reason to know* the buyer's needs and requirements." *Id.* at 208, 378 A.2d at 292. (emphasis in original).

▄▄▄ In this case, the defendant knew the nature of the plaintiff's business. The defendant knew that the nylon tubing was required as a component of the plaintiff's beer dispensing system. TR. 2.70. It knew that the tubing would eventually be immersed within the beer. TR. 2.71. Furthermore, the company knew that nylon 6 did not have the same hydroscopic properties as nylon 11. TR. 2.73. It also knew that the plaintiff required nylon 11 for use in its product. TR. 2.74 & 2.76. In short, the defendant knew of all plaintiff's general and particular requirements except the precise demarcation in absorption rates which would render nylon 6 useless. But the plaintiff's specification of the particular grade of nylon coupled with the defendant's knowledge of the difference in the absorption properties of varying grades of nylon, put the defendant on notice of the particular quality of tubing which would be valuable to the buyer. Thus, the jury could properly find that the defendant had sufficient reason to know of the general and particular requirements of the plaintiff to thereby charge defendant with the consequential losses proximately following from the breach of warranty under section 2715(b).[5] See *R. I. Lampus Co. v. Neville*

**4.** In his treatise Professor Corbin states:
> All that is necessary, in order to charge the defendant with the particular loss, is that it is one that ordinarily follows the breach of such a contract in the usual course of events, or that reasonable men in the position of the parties would have foreseen as a probable result of breach.

5A, Corbin, Corbin on Contracts § 1010 at 79 (1964) (quoted in *R. I. Lampus Co. v. Neville Cement, Etc.*, supra, 474 Pa. at 207, 378 A.2d at 291). See also, *Frank B. Bozzo, Inc. v. Electric Weld Division*, 283 Pa.Super. 35, 423 A.2d 702, 709 (1980). The objective foreseeability approach evolved from the classic case on consequential damages, *Hadley v. Baxendale*, 156 Eng.Rep. 145 (Ex 1854). This century old precedent stated the basic test adopted by the code drafters; " 'whether the losses were foreseeable (not foreseen) by the seller at the time he entered the contract'." *Frank B. Bozzo, Inc. v. Electric Weld Division*, supra, 423 A.2d at 710 (quoting J. White & R. Summers, Uniform Commercial Code 397, 2d Ed. (1980). My charge to the jury incorporated the elements of this test as set forth in the Code.

**5.** With his argument defendant seeks to resurrect in different verbiage, the former Pennsylvania requirement that special circumstances of the buyer must be communicated to the seller in order to properly attribute the consequential damages as within the contemplation of the parties. See *R. I. Lampus Co. v. Neville Cement, Etc.*, supra, 474 Pa. at 206, 378 A.2d at 291. As noted, *Lampus*, supra, does not require a showing of special circumstances within the contemplation of the parties as a predicate for recovery of consequential damages. *Id.* at 208, 378 A.2d at 292. See also, *Ebasco Serv. Inc. v. Penn P. & L. Co.*, 460 F.Supp. 163, 216 n. 64 (E.D.Pa.1978). Defendant confuses the type of ordinary contract damages which naturally flow from the breach with those that follow from special circumstances or particular needs of the buyer. The former are presumed damages which emanate from the general needs of the buyer while the latter seek to compensate the buyer for extraordinary harm resulting from his particular needs. *J. White & R. Summers*, Uniform Commercial Code 390 n.67 2nd Ed. (1980). Recovery for damages resulting from special circumstances or, as described in comment 3 of the code section 2–715, particular needs of the buyer is permissible only if the seller had reason to know of such needs. *Id.* See also, 11 Williston, Williston on Contracts § 1356 at 291 (1968). The damages claimed in the instant case are those ordinary damages which are a necessary consequence of the breach of contract for component parts. Even assuming arguendo, that in order to recover the consequential damages claimed

*Cement, Etc.,* supra, 474 Pa. at 209, 378 A.2d at 293.

Alternatively, the defendant contends that the award of consequential damages is precluded under Section 2–715(2) of the code since the plaintiff failed to perform an adequate inspection of the tubing to ensure that conforming goods were incorporated in the finished product. While the defendant restates the law correctly, the underlying facts do not support his position.

Section 2–715(2)(a) of the Code provides, in part, for the award of consequential damages resulting from seller's breach "which could not reasonably be prevented by cover or otherwise." [6] Hence, the dispositive question is whether the plaintiff's actions upon receipt of the goods were commercially reasonable.

■ The testimony establishes that upon receipt of the tubing from Rimar, the plaintiff performed various tests to insure that the goods conformed to specifications as to length, width, inside and outside diameter, and quantity. TR. 2.37. Furthermore, the product certification of tubing grade forwarded by the defendant was compared to the corresponding bills of lading to verify that the tubing shipped was actually nylon 11. TR. 2.38. It is undisputed that the tubing shipped was nonconforming nylon 6 and that the plaintiff was unaware of the certification error until an investigation into the keg failures was instituted. Moreover, the defendant acknowledged that the plaintiff relied on the certification of product grade. TR. 2.83. The significance of the plaintiff's reliance on the manufacturer's certification is heightened since it is not disputed that nylon 6 and nylon 11 are identical in color and texture. The distinction can only be detected by infrared spectroscopy which was unavailable at the plaintiff's plant. TR. 2.39 & 2.82.

The jury was properly instructed as to the applicable law under Section 2–715(2)(a) of the Code. By awarding damages, the jury implicitly found that the product defect could not reasonably have been discovered under the foregoing circumstances. There is ample evidence to support this conclusion. And while a spectroscopic examination would have further enhanced the accuracy of the plaintiff's inspection procedure, I cannot say that Section 2–715(2)(a) imposes such a burdensome duty as a matter of law. See *Lewis v. Mobil Oil Corp.,* 438 F.2d 500, 509 (8th Cir. 1971). Therefore, in view of the acknowledgment by the defendant of plaintiff's reliance on the certifications of tubing grade and the impossibility of manual detection of grade variance, the question of the reasonableness of the efforts expended by the plaintiff to detect the defect was properly for the jury. See *Hanna Lumber Co. v. Neff,* 265 Ark. 462, 579 S.W.2d 95, 98 (1979).

Defendant also attacks various items of consequential damages which the jury found properly attributable to the breach of contract. Specifically, defendant contends that the awards of: (1) bank interest charges in the amount of $120,420.05; (2) lost profits in the amount of $95,975.00; and (3) a percentage of the manufacturing costs reflecting overhead, were improper. These contentions are equally without merit.

---

sub judice, the seller must have reason to know of the buyer's particular needs, it is indisputable that the defendant knew of the particular requirement for nylon 11 and the losses proximately resulted from that breach. Any argument to the contrary is meritless.

6. 13 Pa.Con.Stat.Ann. § 2715(b)(1). This restriction on the recovery of consequential damages is well embedded in Pennsylvania jurisprudence. In *Henry Shenk Co. v. Erie Co.,* 319 Pa. 100, 178 A. 662 (1935) the court stated that "[t]he rule that a party cannot recover damages from a defaulting defendant which could have been avoided by the exercise of reasona-

ble care and effort is applicable to all types of contracts." *Id.* at 107, 178 A. at 666. Although often categorized as purely a rule of mitigation of damages, in the context of the case at bar it is more properly a question of causation since the defendant in substance alleges that the failure to inspect the goods broke the chain of causation between the breach and losses. Cf., U.C.C. § 2–715, comment 5. (consequential damages includes injury to person or property). See also, *S. J. Groves & Sons Co. v. Warner Co.,* 576 F.2d 524, 528 n.5. (3rd Cir. 1978).

■ A two pronged attack is leveled at the award of interest charges on the bank loan obtained by the plaintiff. First, the defendant asserts that the court abused its discretion in permitting testimony of such interest charges since the damage claim was not formally pleaded or included in the pre-trial order. See Fed.R.Civ.P. 16 and Local Rule 21(d)(2)a. At trial, I found that the circumstances in this case fit the exception in Rule 16 and Local Rule 21 authorizing amendments "to prevent manifest injustice", and allowed the introduction of evidence of interest charges with certain qualifications. Nothing, brought to the attention of the court, requires reconsideration of this ruling. Exclusion of such an appreciable amount of damages from jury consideration would surely be unjust. Moreover, the failure of the defendant to designate the precise contours of prejudice claimed or to request a continuance at trial reinforces my view that the ruling was within the allowable range of the trial judge's discretion.[7] See *Moore v. Sylvania Electric Products, Inc.*, 454 F.2d 81, 84 (3rd Cir. 1972), *Wendkos v. ABC Consolidated Corp.*, 379 F.Supp. 15, 18 (E.D.Pa.1974); *Carl Beasley Ford, Inc. v. Burroughs Corp.*, 361 F.Supp. 325, 335 (E.D.Pa.1973), aff'd, 493 F.2d 1400 (3rd Cir. 1974).

■ Defendant further argues that such an award of interest on the loans obtained by the plaintiff to avoid financial disaster during the period of repair and replacement of the malfunctioning dispensing devices is not properly an item of consequential damages. Similar awards of accrued interest for financing capital losses, however, have been properly sustained as an element of consequential damages. See *Chatlos Systems v. National Cash Register Corp.*, 479 F.Supp. 738, 744 n.5 (D.N.J.1979); *Diversified Environments v. Olivetti Corp.*, 461 F.Supp. 286, 292 (M.D.Pa.1978); *Carl Beasley Ford, Inc. v. Burroughs Corp.*, supra, 361 F.Supp. at 334; *Willred Co. v. Westmoreland Metal Mfg. Co.*, 200 F.Supp. 59, 69 (E.D.Pa.1961); *Certain-Teed Product Corp. v. Goslee Roofing & Sheet Metal Inc.*, 26 Md.App. 452, 339 A.2d 302, 314–15 (1975). Where a seller provides defective goods to a manufacturer with knowledge that they are to be used in the manufacturing process, it is reasonable to assume that the consequent disruption of production will cause financial difficulties for the buyer especially when the buyer is heavily dependent on one product for its financial success as in the case at bar. Accordingly, I cannot say as a matter of law that reasonable men in the position of the parties would not have foreseen the loss of bank interest charges as a probable result of the breach. See *R. I. Lampus Co. v. Neville Cement, Etc.*, supra, 474 Pa. at 207, 378 A.2d at 291.

Defendant's second quarrel is with the jury's award of lost profits as an item of consequential damages. The argument proceeds on the premise that the loss of profits award was based upon a loss in business because of customer dissatisfaction or more appropriately, "loss of goodwill", and not loss of particular sales. It cannot be questioned that "[u]nder Pennsylvania law, a plaintiff may not recover for loss of profits to a business because of customer dissatisfaction or loss of goodwill." *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1225 (3rd Cir.), cert. denied, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). See also, *Eastern Dental Corp. v. Issac Mazel Co. Inc.*, 502 F.Supp. 1354 (E.D.Pa.1980). Pennsylvania strictly adheres to this rule

---

7. *Price v. Inland Oil Co.*, 646 F.2d 90 (3rd Cir. 1981), on which defendant heavily relies, does not dictate a contrary result in this case. In *Price*, a novel theory of liability not included in the pretrial order was advanced by the plaintiff at trial. *Id.* at 95. The court held that to permit a new theory of liability after the submission of evidence was an abuse of discretion. *Id.* at 96. In contrast, the instant case does not present the application of an additional liability theory during trial but introduces only an addi-

tional item of consequential damages which are normally attendant to a breach of contract. Furthermore, defendant became aware of the claim for interest damages upon submission of the pretrial memorandum before the initiation of trial yet waited until the close of the evidence to voice his objections. My instructions and interrogatories submitted to the jury on this issue averted the accrual of prejudice to the defendant.

and, therefore, the defendant's argument must be carefully considered and the record closely scrutinized.

■ The failure to realize expected profits is a compensable loss resulting from a breach of contract. *Hahn v. Andrews,* 182 Pa.Super. 338, 344, 126 A.2d 519, 521 (1956). It is the burden of the party "seeking damages for breach of contract ... to prove such damages with reasonable certainty."[8] *Wilcox v. Regester,* 417 Pa. 475, 484, 207 A.2d 817, 822 (1965). The amount of damage suffered, however, may be determined in any reasonable manner and proof with mathematical certainty is not required. *E. C. Ernst, Inc. v. Kopper & Co., Inc.,* 626 F.2d 324, 327 (3rd Cir. 1980); *English Whipple Sailyard, LTD. v. Yawl Ardent,* 459 F.Supp. 866, 877 (W.D.Pa.1978). The various methods of proof of lost profits are not mutually exclusive, but often one method is more feasible than others. One traditional method is evidence of past profitability in an established business which furnishes a reasonable basis for estimating future profits. *Willred Co. v. Westmoreland Metal Mfg. Co.,* supra, 200 F.Supp. at 64; *Mass. Bonding & Ins. Co. v. Johnson & Harder Inc.,* 343 Pa. 270, 279, 22 A.2d 709, 714 (1941) (citing S. Williston, Williston on Contracts, § 1346A.). "While damages cannot be based on a mere guess or speculation, yet where the amount may be fairly estimated from the evidence, a recovery will be sustained even though such amount cannot be determined with entire accuracy." *Osterling v. Frick et al, Executors,* 284 Pa. 397, 403, 131 A. 250, 251–52 (1925).

■ In this case, the plaintiff's comptroller presented extensive testimony concerning the company's past profitability. TR. 4.23–25, 5.25–32, 5.59–61. The defendant meticulously cross-examined the witness on these figures. TR. 5.31–35. Furthermore, on cross-examination the witness conceded that he did not have personal knowledge of the exact amount of sales lost because of the defective dispensing units. TR. 5.33–35. The jury apparently was cognizant of the disputed lost profit figure and the court's instructions[9] since it rejected the plaintiff's figure for lost profits which was almost double the amount actually awarded. TR. 5.61. In view of the proposition that the evaluation of damages is typically a question for the jury[10] and the wealth of evidence presented at trial, I cannot conclude that the jury award was mere speculation. The evidentiary basis upon which an estimate of lost profits could have been made was sufficient under Pennsylvania law. See *Franklin Music v. American Broadcasting Co.,* 616 F.2d 528, 546 (3rd Cir. 1979); *Ashcraft v. C. G. Hussey & Co.,* 359 Pa. 129, 132–33, 58 A.2d 170, 172 (1948). In breach of warranty cases such as the one at bar the law recognizes the difficulty of accurately proving damages.[11] Thus, the

---

**8.** In *William B. Tanner Co., Inc. v. WIOO, Inc.,* 528 F.2d 262 (3rd Cir. 1975) the court further elaborated stating that:

[t]here can be no award for breach of contract (except in certain cases an award of nominal damages) when there is no evidence produced by which the jury can measure the damages. Damages cannot be awarded by guess work. The Restatement of the Law of Contracts, sec. 331, lays down the following: "Damages are recoverable for losses caused or for profits and other gains prevented by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." In *Rice v. Hill,* 315 Pa. 166, 172, 172 A. 289, 291, this court held: "Damages are never presumed; the plaintiff must establish by evidence such facts as will furnish a basis for their assessment, according to some definite and legal rule."

*Id.* at 272 (quoting *In Re Friese's Estate,* 336 Pa. 241, 246–47, 9 A.2d 401, 403 (1939).

**9.** The jury was charged in accordance with Pennsylvania law that loss of goodwill was not recoverable and further instructed that there should be no loss profit award if the jury concluded that such losses sustained actually resulted from the plaintiff's loss of goodwill in the industry. The interrogatories submitted to the jury also refer only to lost profits.

**10.** C. Anderson, Uniform Commercial Code § 2–715.13.

**11.** See *William B. Tanner Co., Inc. v. WIOO, Inc.,* supra, 528 F.2d at 274 (Seitz, C.J., dissenting); *Pugh v. Holmes,* 486 Pa. 272, 297, 405 A.2d 897, 909–10 (1979); *Mass. Bonding & Ins. Co. v. Johnson and Harder Inc.,* supra, 343 Pa. at 280, 22 A.2d at 714.

reasonable basis for damages that the law requires bars only those damages which "are not the certain result of the wrong, not . . . those damages which are definitely attributable to the wrong and only uncertain in respect of their amount." *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931).

██ Defendant's final contention that the award of excess manufacturing costs attributable to manufacturing overhead is not recoverable is incorrect under the law of Pennsylvania. The manufacturing costs were expended to repair and replace the defective dispensing units. TR. 4.32–43. Additional time in operation of the plant was clearly required to remedy the breach, thus, manufacturing overhead attributable to that extra work is a proper item of damages. *United States v. Curtis T. Bedwell & Sons, Inc.,* 506 F.Supp. 1324, 1331 (E.D.Pa.1981); *Royal Pioneer Paper Box Mfg. Co. v. DeJonge,* 179 Pa.Super. 155, 166, 115 A.2d 837, 842 (1955).

While I have not discussed the evidentiary errors alleged by the defendant in support of its motion for a new trial, I have considered all of the contentions and conclude that my rulings at trial were correct. No further discussion of the merits of these contentions is warranted. Consequently, the defendant's post-trial motions are denied.