## Pee Jay's Packing Company, Inc. v. Makfil Systems

*Daniel J. Ryan,* for defendant Burford Corporation.

*Morton Gordesky,* for plaintiff Pee Jay's Packing Company.

*Edward B. Joseph,* for defendant Makfil Systems.

TAKIFF, *J.,* September 13, 1983—Plaintiff, Pee Jay's Packing Company, Inc., instituted this action in trespass and assumpsit against defendants Makfil Systems and Burford Corporation to recover direct, incidental and consequential damages it allegedly sustained as a result of the inadequate performance and malfunctioning of a fruit packaging machine manufactured, in whole or in part, by Makfil, Burford and other unnamed companies and purchased by plaintiff for use in its business in early

1978. Presently before the court is defendants' joint motion for partial summary judgment seeking, inter alia, dismissal of Count II of the complaint, captioned in trespass and premised upon tort theories of recovery, and any and all of plaintiff's claims for consequential damages. For the reasons more fully set forth below, we grant in part and deny in part defendants' motion.

The facts underlying this lawsuit are as follows: In early 1978, Pee Jay's Packing Company, Inc. was incorporated for the purpose of packaging and processing citrus fruit for distribution to retail supermarket outlets. In October 1977, prior to its incorporation, Joseph A. Pantano, President of plaintiff corporation, attended a produce trade show in New Orleans, Louisiana. Pantano was there shown a scale model of the Makfil Bagger and allegedly was told by Harry Daily, Makfil's representative at the show, that the machine would package, with minor adjustments, various types of citrus fruit, including oranges, grapefruits and lemons. Pantano expressed interest in the machine and, after subsequent negotiations, purchased the Makfil Bagger at a price of $78,352. Under the supervision of Mr. Daily, the machine was installed at Pee Jay's plant in April 1978 and Pee Jay's began its operations immediately thereafter.

Plaintiff contends, and defendants concede for the purposes of this motion, that the Makfil machine from the outset failed to perform in the manner contemplated by plaintiff in that it was unable, despite numerous repairs and attempted adjustments, to properly bag lemons. Plaintiff alleges that the failure of the machine to function in an adequate and acceptable manner has caused it to suffer "substantial economic losses," including the loss of anticipated profits on bagged and bulk lemon sales

to various supermarket chain stores, all of which it seeks recovery in the instant action.

Movants initially contend that Pennsylvania law bars recovery in tort for the purely economic type of losses[1] which plaintiff claims in this action. It is asserted that such losses, as opposed to the losses occasioned by physical injury to person or property which have traditionally been compensable in tort, must be relegated to the realm of contract law and recompensed, if at all, under the applicable warranty provisions of the Uniform Commercial Code. Accordingly, movants seek dismissal of plaintiff's tort claims.

## RECOVERY IN TORT FOR "ECONOMIC LOSS"

The seminal opinions dealing with the issue presently before us were handed down by the Supreme Courts of New Jersey and California nearly 20 years ago. In Santor v. A & M Karagheusian, Inc., 44 N.J.

---

1. "Economic loss" has been defined as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." Comment, Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages — Tort or Contract?, 114 U. Pa. L. Rev. 539, 541 (1966) "Direct economic loss may be said to encompass damage based on insufficient product value; thus, direct economic loss may be 'out of pocket' — the difference in value between what is given and received or 'loss of bargain' — the difference between the value of what is received and its value as represented. Direct economic loss also may be measured by costs of replacement and repair. Consequential economic loss includes all indirect loss, such as loss of profits resulting from inability to make use of the defective product." Note, Economic Loss in Products Liability Jurisprudence, 66 Colum. L. Rev. 917, 918 (1966). See also Jones & Laughlin Corp. v. Johns-Manville Sales Corp., 626 F.2d 280 (3d Cir. 1980); Apel, Strict Liability: Recovery of "Economic" Loss, 13 Idaho L. Rev. 29 (1976).

52, 207 A.2d 305 (1965), a warranty action by a purchaser of allegedly defective carpeting, the Supreme Court of New Jersey, long a leader in the development of product liability law, abolished the requirement of privity and allowed plaintiff to maintain an action for breach of implied warranty directly against the manufacturer. The court, reasoning that the manufacturer of an inferior product is better able to insure against the risk of loss than are powerless individual consumers, whether such loss is in the nature of personal injury, physical damage to other property or to the product itself, also declared that a cause of action for strict tort liability would appropriately lie. Refusing to recognize a distinction between tort recovery for physical injuries and warranty recovery for economic loss, the court stated that:

"[W]hen the manufacturer presents his goods to the public for sale he accompanies them with a representation that they are suitable and safe for the intended use. . . . The obligation of the manufacturer thus becomes what in justice it ought to be — an enterprise liability, and one which should not depend upon the intricacies of the law of sales. The purpose of such liability is to insure that the cost of injuries or damage, either to the goods sold or to other property, resulting from defective products, is borne by the makers of the products who put them in the channels of trade, rather than by the injured or damaged persons who ordinarily are powerless to protect themselves." Id. at 64-65, 207 A.2d at 311-12. See also Cinnaminson Township Board of Education v. U. S. Gypsum Co., 552 F. Supp. 855, 857 (D.N.J. 1982); ICI Australia, Ltd. v. Elliott Overseas Co., 551 F. Supp. 265, 268 (D.N.J. 1982); Herbstman v. Eastman Kodak Co., 68 N.J. 1, 7, 342 A.2d 181 (1975); Heavner v. Uniroyal, Inc., 63 N.J.

130, 147, 305 A.2d 412 (1973). Although clearly a minority view among the states, see our discussion infra, a number of jurisdictions have adopted the Santor approach and permit the tort recovery of purely economic losses. See, e.g., Cova v. Harley Davidson Motor Co., 26 Mich. App. 602, 182 N.W. 2d 800 (1970); Lang v. General Motors Corp., 136 N.W. 2d 805 (N.D. 1965); Iacono v. Anderson Concrete Corp., 42 Ohio St. 2d 88, 326 N.E. 2d 267 (1975); Berg v. General Motors Corp., 87 Wash. 2d 584, 555 P. 2d 818 (1976); City of LaCrosse v. Schubert, Schroeder & Associates, Inc., 72 Wis. 2d 38, 240 N.W. 2d 124 (1976).

In Seely v. White Motor Co., 63 Cal. 2d 9, 403 P. 2d 145, 45 Cal. Rptr. 17 (1965), an action characterized by the court as involving no more than the failure of a product to perform to the level of the complaining party's expectations, the California Supreme Court rejected the Santor analysis and denied recovery under strict liability in tort. The court held that the inadequate or unsatisfactory performance of the product in question, absent physical injury to person or property, was the type of problem which the commercial law of warranties, not tort law, was designed to address. Thus, the court concluded, the doctrine of strict liability was inapplicable to an action for economic loss alone. The court, speaking through Chief Justice Traynor, reasoned:

"The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by

requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone." Id. at 18, 403 P. 2d at 151-52, 45 Cal. Rptr. at 23-24. The analysis and holding of the Seely court, persuasive and well reasoned, has been adopted and adhered to by the vast majority of courts and commentators which have addressed the matter. See, e.g., FlintKote Company v. Dravo Corp., 678 F.2d 942, 948 (11th Cir. 1982) (Georgia law) (economic loss rule prevents recovery in tort when defective product has resulted merely in loss of value or use of thing sold, or cost of repairing it); Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp., 626 F.2d 280, 289 (3d Cir. 1980) (Illinois law) (recovery of economic losses prohibited under claims based on principles of tort law); S. M. Wilson & Co. v. Smith Intern, Inc., 587 F.2d 1363 (9th Cir. 1978) (California law) (economic losses not recoverable in tort); Posttape Associates v. Eastman Kodak Co., 537 F.2d 751, 755 (3d Cir. 1976) (Pennsylvania law) (in commercial transactions, where no personal injury or physical property damage is involved, the Uniform Commercial Code plays predominant role in governing the relationship between buyer and seller);

Fredonia Broadcasting Corp. v. RCA Corp., 481 F.2d 781, 797 (5th Cir. 1973) (Texas law) (tort theories inapplicable to claims for economic loss). Accord Argo Welded Products, Inc. v. J. T. Ryerson Steel & Sons, Inc., 528 F. Supp. 583 (E.D., Pa. 1981) (Pennsylvania law); Midland Forge, Inc. v. Letts Industries, Inc., 395 F.Supp. 506 (N.D. Iowa 1975) (Iowa law); Arizona v. Cook Paint & Varnish Co., 391 F. Supp. 962 (D. Ariz. 1975) (Arizona, California, Hawaii, Texas and Alaska law), aff'd, 541 F.2d 226 (9th Cir. 1976); Hiigel v. General Motors Corp., 190 Colo. 57, 544 P.2d 983 (1975); Clark v. International Harvester Co., 99 Idaho 326, 501 P.2d 784 (1978); Alfred N. Koplin & Co. v. Chrysler Corp., 49 Ill. App. 3d 194, 7 Ill. Dec. 113, 364 N.E. 2d 100 (1977); Price v. Gatlin, 241 Or. 315, 405 P.2d 502 (1965); Speidel, Products Liability, Economic Loss and the Uniform Commercial Code, 40 Tenn. L. Rev. 309 (1973); W. Prosser, Law of Torts §101 at 665 (4th ed. 1971). More recent pronouncements from the supreme courts of several states, adopting the Seely analysis as the better reasoned view, have similarly held that economic losses arising out of commercial transactions, excepting those involving personal injury or damages to other property, are not recoverable in tort. See Northern Power & Engineering Corp. v. Caterpillar Tractor Co., 623 P.2d 324 (Alaska 1981); Moorman Manufacturing Co. v. National Tank Co., 91 Ill. 2d 69, 435 N.E. 2d 443 (1982); Superwood Corp. v. Siempelkamp Corp., Minn. , 311 N.W. 2d 159 (1981); National Crane Corp. v. Ohio Steel Tube Co., 213 Neb. 782, 332 N.W. 2d 39 (1983).

The appellate courts of this Commonwealth have recently addressed the issue presently before us. See Industrial Uniform Rental Company, Inc. v. International Harvester Company, no. 2572 (Pa. Su-

perior Ct. filed July 15, 1983) (discussed infra). The United States Court of Appeals for the Third Circuit, however, interpreting and predicting Pennsylvania law, held in Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Company, 652 F.2d 1165 (3d Cir. 1981) that the majority approach embodied in Chief Justice Traynor's decision in Seely represented the appropriate accommodation between the competing policies underlying tort and contract law. Plaintiff (PGS) initiated an action against Caterpillar Tractor, the manufacturer, to recover damages it sustained as a result of a fire in a front-end loader purchased from Caterpillar in 1971. The machine was operated without incident for a number of years prior to the fire and there was no claim that the machine was unsuitable to perform its intended use or otherwise unable to function properly. PGS advanced tort theories of negligence and strict liability under §402A of the Restatement (Second) of Torts and sought as damages the amount spent on repair and replacement of the allegedly defective loader. Caterpillar moved for summary judgment claiming that the items for which PGS sought damages were not recoverable in tort. The district court agreed and PGS appealed. The court of appeals reversed. Although allowing recovery under the circumstances presented,[2] the court, in language particularly rel-

---

2. The court reasoned that PGS' complaint did not implicate the policies of warranty law since there were no allegations that the loader was of poor quality or unsuitable to perform its intended function. Moreover, because the damage claimed was the result of a sudden and calamitous fire caused by an allegedly hazardous defect in the loader the court concluded that the complaint brought by PGS "appears to fall within the policy of tort law that the manufacturer should bear the risk of hazardous products." Id. at 1175.

evant to the matter sub judice, emphasized that "the principles of warranty law remain the appropriate vehicle to redress a purchaser's disappointed expectations when a defect renders a product inferior or unable adequately to perform its intended function," Id. at 1172, and predicted that the Pennsylvania Supreme Court would "draw a distinction between the type of injury to a defective product that constitutes mere economic loss, and the type of injury that amounts to the sort of physical harm traditionally compensable in tort." Id. at 1173. See also Posttape Associates v. Eastman Kodak Co., 537 F.2d 751 (3d Cir. 1976); Don Charleson & Company v. Burroughs Corp., no. 80-779 (E.D., Pa. July 26, 1982).

A recent decision by the Superior Court of Pennsylvania, handed down after the briefing and argument on the instant motion, indeed draws the distinction contemplated by the court in Pennsylvania Glass Sand and adopts as the law of this Commonwealth the majority approach enunciated by the landmark decision of the Supreme Court of California in Seely, supra. In Industrial Uniform Rental Company, Inc. v. International Harvester Company, no. 2572 (Pa. Superior Ct. filed July 15, 1983), plaintiff commenced an action in trespass against International Harvester, the manufacturer of allegedly defective trucks purchased by plaintiff from Avis Rent A Car System, Inc. for use in its business. The trucks allegedly developed cracks and failures in the frames which necessitated costly repairs by plaintiff for which it sought recovery. The trial court granted defendant's motion for summary judgment, concluding that the damages claimed by plaintiff constituted economic loss which could not be recovered under a tort theory of strict liability. The Superior Court affirmed.

The court relied heavily on the analysis of the Third Circuit Court of Appeals in Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp., 626 F.2d 280 (3d Cir. 1980). There the court, applying Illinois law, held that the purchaser of a roof could not recover in tort for the purely economic losses it sustained as a result of the alleged failure of the roof to perform or function in an adequate and acceptable manner. The Third Circuit's reasoning, quoted and adopted in full by the court in International Harvester, succinctly sets forth the rationale underlying the disallowance of tort recovery in cases of this kind. The court explained:

"The rationale behind strict liability in personal injury situations is not well-suited to claims alleging only economic loss. Economic loss results from the failure of the product to perform to the level expected by the buyer and the seller. Such loss is most frequently measured by the difference in the value of the product as it exists and the value it would have had if it performed as expected. Thus, economic loss is almost always incurred by the owner of the product, not by persons who merely use it or come into contact with it. The original purchaser, particularly a large company such as Jones & Laughlin, can protect itself against the risk of unsatisfactory performance by bargaining for a warranty. Alternatively, it may choose to forego warranty protection in favor of a lower purchase price for the product. Subsequent purchasers may do likewise in bargaining over the price of the product. In any event, because persons other than the owner of the product will not incur economic losses resulting from the product's. poor performance, the costs associated with economic loss will likely be reflected in the price of the product. There accordingly would seem to be no

need to internalize these costs through a non-price mechanism such as strict liability.

"Finally, the extension of strict liability proposed here by Jones & Laughlin would appear to conflict with the decision by the Illinois Legislature to enact the sale provisions of the Uniform Commercial Code (UCC). Ill. Rev. Stat. ch. 26, §§2-101 to 2-725 (1973). Section 2-313 to the code recognizes the existence of express warranties, and §2-314 enacts an implied warranty of merchantability and fitness. Section 2-314 provides that "[u]nless excluded or modified . . . , a warranty that the goods shall be merchantable is implied in a contract for their sale." Id. §2-314(1). To be merchantable, the goods, inter alia, must be "fit for the ordinary purposes for which such goods are used." Id. §2-314(2)(c). The code also provides, however, that the parties to a sales contract may agree that the buyer possesses no warranty protection at all, or may limit any warranties in any reasonable manner. Id. §2-316. The parties may even agree to exclude the implied warranty of merchantability and fitness if they do so in writing, and may modify the implied warranty by clear and conspicuous language, Id. §2-316(2).

"The extension of strict liability to cover economic losses in effect would make a manufacturer the guarantor that all of its products would continue to perform satisfactorily throughout their reasonably productive life. Inasmuch as the doctrine of strict liability does not permit a manufacturer to limit its liability through the use of a waiver or a limited warranty, importation of strict liability into the economic loss area would effectively supersede §2-316 of the UCC. Yet, there is nothing in prior opinions of the Illinois Supreme Court to suggest that it would undertake such an encroachment on the legislative prerogative. As the Supreme Court of Idaho

remarked recently in dealing with this very question:

"[T]he legislatures of nearly every state in the union, have adopted the UCC which carefully and painstakingly sets forth the rights between the parties in a sales transaction with regard to economic loss. This court, in the common law evolution of the tort law of this state, must recognize the legislature's action in this area of commercial law and should accommodate when possible the evolution of tort law with the principles laid down in UCC.

"Consequently, we do not believe that the Illinois Supreme Court would extend its common law of tort liability in the manner suggested by Jones & Laughlin.

"For the foregoing reasons, we predict that the Illinois Supreme Court would hold that economic losses are not recoverable under claims based on principles of tort law." Id. at 288-89 (Footnotes omitted.)

Relying on the above quoted language and after reviewing cases in other jurisdictions which have addressed the issue, the Superior Court in International Harvester formulated the following rule: "In an action between commercial enterprises, where defective design, manufacture and sale of a product is alleged, where there is nothing in the record to indicate that the defect is a condition potentially dangerous to persons or to property, and where the purported defect results in progressive deterioration of the product itself, the buyer's cause of action for its economic losses against the seller is in breach of warranty under the UCC." Slip op. at 18.

The analysis and holding of the court in International Harvester compels the dismissal of plaintiff's tort claims. Plaintiff and defendants, equally sophisticated commercial entities, entered into a transac-

tion the parameters of which are governed by the pertinent provisions of the UCC. Nothing in this action, as in International Harvester, in any way implicates the policies of tort law and we, therefore, grant defendants' motion and dismiss Count II of plaintiff's complaint.

## RECOVERY OF CONSEQUENTIAL DAMAGES UNDER UNIFORM COMMERCIAL CODE

Movants next contend that the pertinent warranty provisions of the Pennsylvania version of the Uniform Commercial Code bar recovery of plaintiff's alleged consequential damages. We disagree.

The normal measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted. 13 Pa. C.S. §2714(b) (Purdon's 1983 Pamphlet). However, where appropriate, incidental and consequential damages may also be recovered. 13 Pa. C.S. §2714(c)." Under §2-715(2), consequential damages are proper for any loss resulting from general or particular requirements and needs of which the seller at the time of contracting *had reason to know* and which could not reasonably be prevented by cover or otherwise." R. I. Lampus Co. v. Neville Cement, Etc., 474 Pa. 199, 206-07, 378 A. 2d 288, 291 (1977) (Emphasis in original.) The requirement under the code that a buyer attempt to cover essentially reflects the general duty to mitigate damages applicable to all types of contracts. See S. J. Groves & Sons Co. v. Warner Co., 576 F. 2d 524 (3d. Cir. 1978); Draft Systems, Inc. v. Rimar Manufacturing, Inc., 524 F. Supp. 1049 (E. D., Pa. 1981), aff'd., 688 F. 2d 280 (3d Cir. 1982); Henry Shenk Co. v. Erie Co., 319 Pa. 100, 178 Atl. 662 (1935).

Movants contend that plaintiff."made no attempt to mitigate its lemon losses after it discovered the packing machine's inability to handle lemons" and, "[t]herefore, Pee Jay's cannot recover 'lost' lemon profits as consequential damages under the UCC." Defendants' Memorandum of Law at 13. While a jury, after the facts are fully developed at trial, may well conclude that plaintiff did indeed fail to act in a commercially reasonable manner in preventing or mitigating his damages in accordance with 13 Pa. Cons. Stat. Ann. §2715(2), we cannot, based on the record before us, make this determination as a matter of law. Resolving all doubts and drawing all reasonable inferences in favor of the non-moving party, as we must for purposes of a summary judgment motion, Acker v. Palena, 260 Pa. Super. 214, 393 A.2d 1230 (1978), we conclude that genuine issues of material fact exist concerning the reasonableness of plaintiff's action following its receipt, use and discovery of the alleged malfunctioning of the machine here in question.

## RECOVERY FOR LOSS OF ANTICIPATED PROFITS

Movants finally contend that plaintiff, a brand new and allegedly unique business with no sales record prior to April 1978, cannot in any event recover damages for loss of anticipated profits on sales of bagged and bulk lemons since such losses cannot be proved with the requisite degree of certainty. Such damages, movants contend, are entirely too speculative to permit recovery in this action. See, e.g. Exton Drive-In, Inc. v. Home Indemnity Co., 436 Pa. 480, 261 A.2d 319 (1969), cert. denied, 400 U.S. 819 (1970); Pines Plaza Bowling, Inc. v. Rossview, Inc., 394 Pa. 124, 145 A.2d 672 (1958).

Again, we must disagree with defendants and deny the motion.

Upon proper proof, loss of profits may be recovered in a contract action. See Taylor v. Kaufhold, 368 Pa. 538, 84 A.2d 347 (1951); Western Show Co. v. Mix, 308 Pa. 215, 162 Atl.667 (1932). "The general rule of law applicable for loss of profits . . . allows such damages where (1) there is evidence to establish them with reasonable certainty; (2) there is evidence to show that they were the proximate consequence of the wrong; and . . . that they were reasonably foreseeable." Delahanty v. First Pennsylvania Bank, no. 1298 (Pa. Superior Ct. filed July 15, 1983). See also Pollack v. Morelli, 245 Pa. Super. 388, 369 A.2d 458 (1976). Although the courts of this Commonwealth are generally reluctant to award lost profits where, as here, a business is new and untried, see Exton Drive-In, Inc. v. Home Indemnity Co., 436 Pa. 480, 261 A.2d 319 (1969), recovery of this element of damages under such circumstances is clearly not prohibited. In General Dynafab, Inc. v. Chelsea Industries, Inc., 301 Pa. Super. 261, 447 A.2d 958 (1982). Reargument denied August 4, 1982, for example, the Superior Court remanded the case for a new trial solely on the issue of damages because the jury had been improperly instructed thereon. The court stated:

"Next, Chelsea asserts that lost profits may not be used as a measure of damages where, as here, a new business with no record of prior profitability exists. Decisions of this court and of our Supreme Court have suggested that damages for lost profits of a new business are too speculative. Exton Drive-In v. Home Indemnity Co., 436 Pa. 480, 261 A.2d 319 (1979), cert. den. 400 U.S. 819, 91 S.Ct. 36, 27 L.Ed.2d 46 (1970); Pines Plaza Bowling, Inc. v.

Rossview, Inc., 394 Pa. 124, 145 A.2d 672 (1958); Pollock v. Morelli, 245 Pa. Super. 388, 369 A.2d 458 (1976). Nevertheless, our courts have held that damages may be assessed for loss of profit where such a loss was reasonably foreseeable to the parties at the time that the contract was entered and where those damages are capable of proof of reasonable certainty." Taylor v. Kaufhold, 368 Pa. 538, 84 A.2d 347 (1951); Mellon Bank, N.A. v. Aetna Business Credit, Inc., 500 F.Supp. 1312 (W.D., Pa. 1980); Restatement, Contracts, §331 (1932). Id. at 960. The court continued:

"While it is arguable here that Dynafab was a newcomer to the business herein, nevertheless, unlike plaintiffs in Exton Drive-In, supra, Pines Bowling, Inc., supra, and Pollock, supra, Dynafab was able to show that there was significant interest in their product before the contract breach occurred. The record demonstrates that Dynafab had commitments for orders from four sources. That Dynafab could demonstrate a sales record of Fiberweld Products during the previous one and one-half years. Evidence was submitted also concerning the projected sales, raw material needs and profitability of the Chelsea plant at Jersey Laminating and Finishing Company. Clearly, this evidence is not entirely of an unspeculative nature, however, we believe that if the jury believed it, it could come to a reasonable determination as to damages resulting from loss of future profits. Thus, we hold that the evidence should be submitted to the jury for it to decide its weight in the assessment of damages. See Kasemier v. National Fuel Gas Distribution Corporation, 279 Pa. Super. 334, 341 n. 1, 421 A.2d 226, 230 n.1 (Spaeth, J. Dissenting, 1980). Id. See also Merion Spring Co. v. Muelles Hnos. Garcia Torres, 315 Pa. Super. 469, 462 A.2d 686 (1983). The

Dynafab court concluded that the lower courts should liberally allow evidence of alleged lost profits to be submitted to the jury, permitting that body to decide, in light of the history of the business and other pertinent factors, whether the amount of such profits could be estimated with reasonable certainty so as to allow recovery. Thus, it is the function of the jury, where warranted and after appropriate instructions have been given from the court, to determine whether or not plaintiff has satisfied the heavy burden in establishing his right to recover this element of damages. Based on the record presently before us, we cannot now say, as a matter of law, that the requisite degree of proof will not be presented at the trial of the instant action to justify the award of damages for loss of anticipated profits.

For all the foregoing reasons, we enter the following

## ORDER

And now, this September 13, 1983, upon consideration of defendants' joint motion for partial summary judgment, plaintiff's response thereto, and after oral argument, it is hereby ordered and decreed that said motion is granted in part and denied in part. Count II of the complaint, captioned in trespass, is hereby dismissed. In all other respects, said motion is denied.